Robert W. Brownlie (Bar No. 138793)
Ryan T. Hansen (Bar No. 234329)
Katherine J. Page (259556)
**BROWNLIE HANSEN LLP**
10920 Via Frontera, Suite 550
San Diego, California 92127
Tel:   858.357.8001
Robert.Brownlie@brownliehansen.com
Ryan.Hansen@brownliehansen.com
Katherine.Page@brownliehansen.com

Attorneys for Defendant
NEXTFOODS, INC.

# UNITED STATES DISTRICT COURT FOR

# THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVLYN ANDRADE-HEYMSFIELD, on behalf of herself, all others similarly situated, and the general public,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>NEXT FOODS, INC.,<br><br>　　　　　　　　　　Defendants. | CASE NO. 3:21-cv-01446-BTM-MSB<br><br>**DEFENDANT NEXTFOODS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>PER CHAMBERS, NO ORAL ARGUMENT  UNLESS DIRECTED BY THE COURT<br><br>Date:  December 10, 2021<br>Time:  11:00 a.m.<br>Dept: 2C<br><br>Complaint Filed: August 13, 2021 |

{00012353}

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND ................................................................3

    A.   Plaintiff. ....................................................................................3

    B.   NextFoods. ...............................................................................4

III.  LEGAL STANDARD ..........................................................................5

IV.  ARGUMENT ......................................................................................6

    A.   No Reasonable Consumer Would Be Deceived by the
          Challenged Statements. ..........................................................6

    B.   Plaintiff Fails to Plausibly Plead That the Probiotic Drinks
          Contain High Levels of Sugar or That They Are Harmful. ...............10

        1.   The Studies on Which the Complaint Relies Do Not
               Establish the Probiotic Drinks Have a High Sugar Content
               or Are Unhealthy. ......................................................10

        2.   This Case is Different than Other Cases in Which the
               Courts Have Found Studies Support Claims. ..........................13

    C.   Plaintiff Lacks Standing to Bring the UCL, CLRA and FAL
          Claims Because She Fails to Sufficiently Plead That She
          Suffered Economic Injury. ....................................................15

        1.   Plaintiff Fails to Sufficiently Plead That She Purchased
               any of the Probiotic Drinks. ...............................................15

        2.   Plaintiff Fails to Sufficiently Plead That She Relied on any
               of the Challenged Statements. ...........................................18

    D.   Certain of the Challenged Statements are Nonactionable. ................19

    E.   Plaintiff Fails to State a Claim for Breach of Express Warranty.......20

    F.   Plaintiff Fails to State a Claim for Breach of Implied Warranty.......21

    G.   Plaintiff Fails to State a Claim for Restitution. ...................................22

    H.   Plaintiff Lacks Article III Standing to Seek Injunctive Relief. .........24

V.      CONCLUSION ............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Beverage Ass'n v. City & Cty. of San Francisco*,
916 F.3d 749 (9th Cir. 2019) .................................................................. 13

*Am. Suzuki Motor Corp.*,
37 Cal. App. 4th 1291 (1995) ................................................................ 21

*Andrade-Heymsfield v. Danone US, Inc.*,
No. 19-CV-589-CAB-WVG, 2019 WL 3817948 (S.D. Cal. Aug. 14, 2019) passim

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................. 6, 22

*Bates v. United Parcel Service, Inc.*,
511 F.3d 974 (9th Cir. 2007) .................................................................. 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............................... 5, 6

*Blanco v. Baxter Healthcare Corp.*,
158 Cal. App. 4th 1039 (2008) ............................................................... 21

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ............................................................................... 24

*Clark v. Perfect Bar*,
No. C 18-06006 WHA, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) ................. 7

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ............................................................. 21, 22

*Colgan v. Leatherman Tool Grp., Inc.*,
135 Cal. App. 4th 663 (2006) ................................................................ 23

*Cook, Perkiss, & Liehe v. Northern California Collection Service, Inc.*,
911 F.2d 242 (9th Cir.1990) ................................................................... 19

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ................................................................ 11

*Dvora v. Gen. Mills, Inc.*,
No. CV 11–1074–GW(PLAx), 2011 WL 1897349 (C.D. Cal. May 16, 2011) ..... 18

*Dysthe v. Basic Rsch. LLC*,
No. CV 09-8013 AG SSX, 2011 WL 5868307 (C.D. Cal. June 13, 2011) ..... 17, 18

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ............................................................. 6, 8, 9

*Gibson v. Jaguar Land Rover N. Am., LLC*, No.,
CV2000769CJCGJSX, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ................. 22

*Glen Holly Entertainment, Inc. v. Tektronix Inc.*,
343 F.3d 1000 (9th Cir. 2003) ................................................................ 19

iii

*Grivas v. Metagenics, Inc.*,
   No. SACV1501838CJCDFMX, 2018 WL 6185977 (C.D. Cal. Jan. 4, 2018) ...... 17

*Hadley v. Kellogg Sales Co.*,
   273 F. Supp. 3d 1052 (N.D. Cal. 2017) ........................................................ 13, 14

*Hammock v. Nutramarks, Inc.*,
   No. 15cv2056 BTM (NLS), 2016 WL 4761784 (S.D. Cal. Sept. 12, 2016) ......... 21

*Henderson v. Gruma Corp.*,
   No. CV-10-04173 AHM (AJWx), 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) 23

*Holt v. Foodstate, Inc.*,
   No. 15CV78 L (JMA), 2015 WL 9592534 (S.D. Cal. Dec. 31, 2015) .................. 17

*Hunter v. Nature's Way Prod., LLC*,
   No. 16CV532-WQH-BLM, 2016 WL 4262188 (S.D. Cal. Aug. 12, 2016) .......... 17

*Hydroxycut*,
   No. 10CV00587, 2011 WL 1059182 (S.D. Cal. Mar. 21, 2011) .......................... 17

*In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*,
   No. 13-2438 PSG (PLAX), 2017 WL 385042 (C.D. Cal. Jan. 24, 2017) ............. 17

*In Re Hydroxycut Mktg. & Sales Pracs. Litig.*,
   No. 09CV2492-BTM (AJB), 2010 WL 1838080 (S.D. Cal. May 5, 2010) .......... 16

*Jackson v. Gen. Mills, Inc.*,
   No. 18CV2634-LAB (BGS), 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ........ 24

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*,
   578 F. Supp. 2d 1229 (C.D. Cal. 2008) ............................................................... 20

*Julian v. TTE Tech., Inc.*,
   No. 20-CV-02857-EMC, 2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) ............. 22

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ....................................................................... 6, 15

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ........................................................................... 11

*Koehler v. Litehouse, Inc.*,
   No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) .................. 23

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ...................................................................................... 23

*Krommenhock v. Post Foods, LLC*,
   255 F. Supp. 3d 938 (N.D. Cal. 2017) ..................................................... 9, 13, 14, 15

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ........................................................................................ 15

*Lacano Investments, LLC v. Balash*,
   765 F.3d 1068 (9th Cir. 2014) ............................................................................. 24

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011)...............................................................24
*McMorrow v. Mondelez Int'l, Inc.*,
   No. 17-CV-02327-BAS-JLB, 2018 WL 3956022 (S.D. Cal. Aug. 17, 2018)...9, 13
*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989)...............................................................15
*Nacarino v. Chobani, LLC*,
   No. 20-CV-07437-EMC, 2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ..............22
*Newcal Indus., Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008)...............................................................19
*O'Shea v. Littleton*,
   414 U.S. 488, 94 S. Ct. 669, 38 L.Ed.2d 674 (1974) ...........................................24
*Riva v. Pepsico, Inc.*,
   82 F. Supp. 3d 1045 (N.D. Cal. 2015) ...................................................11
*Shanks v. Jarrow Formulas, Inc.*,
   No. LACV1809437PAAFMX, 2019 WL 7905745 (C.D. Cal. Dec. 27, 2019).....24
*Sharma v. Volkswagen*,
   No. 20-CV-02394-JST, 2021 WL 912271 (N.D. Cal. Mar. 9, 2021)...................22
*Sharpe v. Puritan's Pride, Inc.*,
   466 F. Supp. 3d 1066 (N.D. Cal. 2020) ...................................................23
*Silver v. BA Sports Nutrition*, LLC,
   No. 20-CV-00633-SI, 2020 WL 2992873 (N.D. Cal. June 4, 2020) ......................8
*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020)...............................................................22, 24
*Stewart v. Kodiak Cakes, LLC*,
   No. 19-CV-2454-MMA (MSB), 2021 WL 1698695 (S.D. Cal. Apr. 29, 2021)...25
*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
   83 F. Supp. 3d 855 (N.D. Cal. 2015) ...................................................21
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S. Ct. 2499 (2007)...................................................11
*TopDevz, LLC v. LinkedIn Corp.*,
   No. 20-CV-08324-SVK, 2021 WL 3373914 (N.D. Cal. Aug. 3, 2021)...............23
*Truxel v. Gen. Mills Sales, Inc.*,
   No. C 16-04957 JSW, 2019 WL 3940956  (N.D. Cal. Aug. 13, 2019).......6, 7, 8, 9
*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)...............................................................6, 15
*Williams v. Beechnut Nutrition Corp.*,
   185 Cal. App. 3d 135, 229 Cal.Rptr. 605 (1986)...................................20
*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008)...............................................................6, 7, 8, 9

*Zeiger v. WellPet LLC*,
   No. 3:17-cv-04056-WHO, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021)..............22

## I.       INTRODUCTION

This case involves a putative class action in which Plaintiff alleges the labels on NextFoods, Inc.'s ("NextFoods'") GoodBelly Probiotic Drinks (the "Probiotic Drinks" or, as the Complaint refers to them, the "JuiceDrinks") are false and misleading due to their allegedly "high sugar content." NextFoods moves to dismiss because the Complaint fails to allege sufficient facts showing: (1) reasonable consumers would be misled; (2) the Probiotic Drinks contain high levels of sugar or are unhealthy; (3) the specificity required by Rule 9(b) surrounding Plaintiff's purchase, whether she made a purchase, which if any of the Probiotic Drinks she purchased, and what she relied upon; (4) the statements are actionable; (5) an express or implied warranty; (6) an entitlement to restitution; and (7) the threat of future injury required for injunctive relief. For each of these reasons, the Complaint fails to allege a valid claim and should be dismissed.

Plaintiff is no stranger to this type of case. Plaintiff filed a similar class action in this District alleging she was deceived by statements about the benefits of coconut milk because it also contained allegedly high levels of saturated fat. The court dismissed Plaintiff's complaint with prejudice because, among other reasons, the Nutrition Facts on the label accurately disclosed the fat content and "common sense dictates that an overall healthful diet is also necessary." *Andrade-Heymsfield v. Danone US, Inc.*, No. 19-CV-589-CAB-WVG, 2019 WL 3817948, * 8 (S.D. Cal. Aug. 14, 2019), *appeal dismissed*, No. 19-56082, 2020 WL 5513552 (9th Cir. Aug. 13, 2020). Plaintiff now claims she was deceived again, this time by statements on the Probiotic Drinks. As in her last class action, the Nutrition Facts prominently displayed on the Probiotic Drinks label accurately disclose the amount of total sugar and added sugar (if any). This is not a case where the amount of total sugar and added sugar (if any) was in "fine print."

Nor did Plaintiff decide to purchase the product without scouring the label. The statements Plaintiff challenges are on all panels of the carton <u>except</u> the front

DEFENDANT'S MEMORANDUM OF P. & AUTH. IN SUPPORT OF MOTION TO DISMISS COMPLAINT
CASE NO. 3:21-CV-01446-BTM-MSB

panel and the side panel with the large Nutrition Facts section offset in white and black.  It is not plausible that Plaintiff investigated a new product and read every panel except the panel with the large Nutrition Facts section disclosing, among other ingredients, the amount of total sugar and added sugar (if any).  Plaintiff's claims are particularly implausible since Plaintiff alleges she is interested in health and *nutrition*, was looking for a healthy beverage, and she was involved in recent litigation centered on the importance of the Nutrition Facts in labeling.

The Court should dismiss the Complaint for the following reasons:

First, the Complaint fails to adequately plead that a reasonable consumer would have been misled by the challenged statements because the product labels disclose the amount of total sugar and added sugar (if any) in the Probiotic Drinks. Courts have dismissed similar claims on this basis, holding that where a product label discloses the amount of sugar in the product, it is implausible that a reasonable consumer would be misled by statements identifying the product's health benefits.

Second, the Complaint fails to plausibly allege the underlying theory of its case – that the Probiotic Drinks contain excessive sugar and are unhealthy.  Indeed, the Complaint makes the conclusory allegation that the Probiotic Drinks have a "high sugar content" and then cites 18 pages of studies regarding "sugar sweetened beverages," "sugar containing beverages," "juices," "soft drinks," and "added sugar," but fails to tie any of these studies, drinks or juices to the Probiotic Drinks and the relatively low levels of sugar and added sugar (in some cases no added sugar) in the Probiotic Drinks.  Moreover, the studies cited by Plaintiff do not pertain to the Probiotic Drinks.  Several of the studies demonstrate that consumers of the Probiotic Drinks would be in the control groups for the studies (due to the low sugar content of the Probiotic Drinks compared to the products in the studies) showing a reduced risk of disease.

Third, because Plaintiff's claims are grounded in fraud, the Complaint must meet Rule 9(b)'s heightened pleading standards.  However, the Complaint relies on

conclusory allegations and allegations qualified by "[a]s best she can recall" as to whether Plaintiff (a) purchased any of the Probiotic Drinks and, if she did, when and which of the Probiotic Drinks Plaintiff purchased or (b) relied on any of the challenged statements on the Probiotic Drinks at the time of purchase.

Fourth, two of the four statements the Complaint challenges are not quantifiable, but rather constitute generalized, vague, and unspecific assertions and, thus, are nonactionable puffery as a matter of law.

Fifth, Plaintiff's express warranty and implied warranty claims must be dismissed for the same reasons and because the Complaint fails to plead which of the challenged statements constituted a warranty, whether express or implied. Further, with respect to the implied warranty claim, the Complaint fails to plead that the Probiotic Drinks had a "fundamental defect that render[ed] the product unfit for its ordinary purpose," that there was privity between Plaintiff and NextFoods, or that Plaintiff was physically injured by drinking the product.

Sixth, Plaintiff has failed to plead facts to establish a claim for restitution. Plaintiff's legal claims for damages overlap with her claims for restitution, and she has pled only conclusory allegations that she lacks an adequate remedy at law.

Finally, Plaintiff lacks Article III standing to seek injunctive relief as she has not, and cannot, allege a threat of future injury.

Accordingly, NextFoods respectfully requests the Court grant its motion to dismiss the Complaint in its entirety with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff.

Plaintiff claims she is interested in "health and nutrition." [1]  (Compl. ¶ 77.)  It is possible Plaintiff never purchased any Probiotic Drink, as she does not allege with

---

[1] This is the second class action Plaintiff has filed in this District alleging to have been confused by accurate statements regarding the benefits of a product despite the product having other, allegedly unhealthy ingredients.  *See Andrade-Heymsfield*, 2019 WL 3817948.

any certainty that she made such purchase.  Instead, "[*a*]*s best she can recall*,

Plaintiff started purchasing 32 oz. cartons of the [Probiotic] Drinks in 2018 and

continued to purchase the products until around the middle of 2019." (*Id.* at ¶ 76

(emphasis added).)  Again, "to the best of her recollection," Plaintiff read and relied

on statements on at least one side of the carton and the back of the carton. (*Id.* at ¶

77.)  At the time she purportedly purchased the Probiotic Drinks, Plaintiff allegedly

"was seeking beverages that were healthy to consume." (*Id.* at ¶ 79.)  Based on her

purported purchase, Plaintiff asserts claims for violations of the California Unfair

Competition Law ("UCL"), False Advertising Law ("FAL") and Consumer Legal

Remedies Act ("CLRA") and breach of express and implied warranties.

### B.      NextFoods.

NextFoods manufactures various products, including the Probiotic Drinks,

which contain probiotic cultures to help promote digestive health. (*See* Compl. at ¶¶

1, 11.)  The Probiotic Drinks come in many varieties. (*See id.* at ¶ 1, n.1.)  The

Nutrition Facts, which is prominently placed on the side of each carton of the

Probiotic Drinks (directly to the right of the front of the carton), accurately discloses

the amount of total sugar and, if any, the amount of added sugar in that particular

variety. (*See* Compl. at Appx. 1.)  As the Nutrition Facts show, each variety

contains different ingredients and different levels of sugar and added sugar. *Id.*

Some varieties contain *no* added sugar. *Id.*  Other varieties contain between 10

grams and 14 grams of added sugar, and all of the varieties contain between 9 grams

and 21 grams of total sugar (which includes added sugar). (Compl. at App. 1.)  The

Complaint does not allege that any of these statements are false or misleading.

The opposite side of the carton of each Probiotic Drink contains information

about probiotics in general, the specific strain of probiotic – LP299V – in the

Probiotic Drinks, and the benefits of having intestinal microflora in balance. *Id.*

The Complaint does not allege that any of the statements on this side of the carton

are false.  Nonetheless, and despite the disclosure of the amount of total sugar and

added sugar (if any) in each Probiotic Drink on the Nutrition Facts prominently placed on the carton, Plaintiff claims that the following statement is misleading because the Probiotic Drinks also contain sugar:

> WE DIG SCIENCE. LP299V is naturally occurring in the human gut. It has been studied for more than 2 decades and has numerous research trials to show that it may help promote healthy digestion and overall wellness.

(Compl. at ¶¶ 77.c., 78.)

The back side of the carton contains a general description of the drink, sets forth a four-step "12 Day Belly Reboot" (step 3 of which is to "Drink *one 8 oz. glass* of delicious GoodBelly *a day* for 12 days"), and then encourages customers to continue drinking the Probiotic Drink daily.  (Compl. at App. 1.)  The Complaint does not allege that any of the statements on the back of carton are false. Nonetheless, and despite the disclosure of sugar in the Nutrition Facts, Plaintiff claims that the following statements on the back of the carton are misleading because the Probiotic Drinks also contain sugar:

> GoodBelly Probiotics is a delicious blend of fruit juices and a daily dose of probiotic cultures created to naturally renew your digestive health, right where your overall health gets started – in your belly.

> START YOUR GOODHEALTH GAME PLAN . . . Drink one 8 oz. glass of delicious GoodBelly a day for 12 days.

> Reboot your belly, then make GoodBelly your daily drink to keep your GoodHealth going. Because when your belly smiles the rest of you does too.

*Id.*

## III.   LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) unless it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555). "'Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Andrade-Heymsfield*, 2019 WL 3817948, at * 5 (quoting *Iqbal*, 556 U.S. at 679).

"The heightened pleading standard of Rule 9(b) applies to all claims 'grounded in fraud' and may include claims where fraud is not a required element." *Id.* (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) (citations omitted).

## IV.   ARGUMENT

### A.   No Reasonable Consumer Would Be Deceived by the Challenged Statements.

To state a claim under the UCL, CLRA and FAL, "a plaintiff must allege that the alleged false and misleading statements were 'likely to deceive a reasonable consumer.'" *Truxel v. Gen. Mills Sales, Inc.*, No. C 16-04957 JSW, 2019 WL 3940956, *3 & n.1 (N.D. Cal. Aug. 13, 2019) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "The term 'likely' means probable, not just possible." *Id.* "'This requires more than a mere possibility that [the] label 'might conceivably be misunderstood by some few customers viewing it in an unreasonable manner.' Rather, the reasonable consumer standard requires a probability 'that a significant portion of the consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted)). "'[I]f the alleged misrepresentation would not mislead a reasonable consumer, then the allegation

may be dismissed on a motion to dismiss.'" *Id.* (quoting *Williams*, 552 F.3d at 938).

Courts have dismissed UCL, CLRA and FAL claims where, as here, the complaint cannot plausibly allege that a reasonable consumer would be misled by packaging and advertising about a product's health benefits or healthiness where the product accurately disclosed the sugar content.  For example, in *Clark v. Perfect Bar*, No. C 18-06006 WHA, 2018 WL 7048788, *1 (N.D. Cal. Dec. 21, 2018), *aff'd* 816 Fed.Appx. 141 (9th Cir. 2020), the court dismissed claims under the UCL, FAL and CLRA, finding that, despite allegedly having high levels of sugar, the health and wellness claims on Perfect Bars could not plausibly mislead a reasonable consumer because the Nutrition Facts properly disclosed the sugar content:

> Plaintiffs' grievance is that the packaging led them to believe that the bars would be "healthy" when, in supposed point of fact, the added sugar rendered them unhealthy or, in the alternative, less healthy from what they otherwise had believed. This is untenable. The actual ingredients were fully disclosed. Reasonable purchasers could decide for themselves how healthy or not the sugar content would be. No consumer, on notice of the actual ingredients described on the packing including honey and sugar, could reasonably overestimate the health benefits of the bar merely because the packaging elsewhere refers to it as a health bar and describes its recipe as having been handed down from a health-nut parent. **The** honey/**sugar content was properly disclosed — that is the end of it — period**. The argument in the alternative that plaintiffs would have paid less had they known that the health benefits had been overstated is like saying a sports car wasn't sporty enough so please give a partial refund.

*Id.* (emphasis added).

In *Truxel*, 2019 WL 3940956, at *1, the court reached the same conclusion:

> Plaintiffs cannot plausibly claim to be misled about the sugar content of their cereal purchases because Defendant provided them with all truthful and required objective facts about its products, both on the side panel of ingredients and the front of the products' labeling. Here too, the actual ingredients were

fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own conclusions about whether or not the sugar content was healthy for them.

*Id.* at \*4.  In *Silver v. BA Sports Nutrition*, LLC, No. 20-CV-00633-SI, 2020 WL 2992873, \* 8 (N.D. Cal. June 4, 2020), the court granted a motion to dismiss UCL, CLRA and FAL claims because the packaging and labeling of allegedly high-sugar BodyArmor sports drinks with the term "Superior Hydration," could not plausibly mislead a reasonable consumer where the Nutrition Facts also disclosed the total amount of sugar in the product.  In *Andrade-Heymsfield*, the court found statements regarding the health benefits listed on coconut milk, which allegedly also contained unhealthy levels of saturated fat, were not likely to deceive a reasonable plaintiff because, among other reasons, the coconut milk accurately disclosed the level of saturated fat in the product and "[c]ommon sense dictates that an overall healthful diet is also necessary." *Andrade-Heymsfield*, 2020 WL 5513552, at \* 8.

Here, the Nutrition Facts on the side of each variety of the Probiotic Drinks discloses the total sugar content and added sugar content (if any) in that particular variety of the Probiotic Drinks.  (Compl. at App. 1.)  Thus, as in the cases cited above, it is implausible that a reasonable consumer would have been misled by the other, true statements on the Probiotic Drinks due to the amount of sugar in the respective products.

As in *Truxel*, the Court should reject the argument, which Plaintiff's counsel made in *Truxel*, that Plaintiff was not required to read the nutrition label to discover the amount of sugar.  *See Truxel*, 2019 WL 3940956, at \* 4.  Plaintiff likely will cite *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) in which the Ninth Circuit stated, "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.*  The *Truxel* court considered and rejected this very argument, stating "[a]s the Ninth Circuit in *Ebner*

*v. Fresh, Inc.* [later] explained, *Gerber* did not hold that litigants may ignore the information on a product's label. Rather, *Gerber* 'stands for the proposition that if the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception.'" *Truxel*, 2019 WL 3940956, at * 4 (citing *Ebner v. Fresh, Inc.*, 838 F.3d at 966).[2]

Here, this case is further removed from *Gerber* than *Truxel* because the Complaint admits (a) the statements Plaintiff challenges were on the side and back, not the front, of the Probiotic Drinks and (b) the Nutrition Facts is prominently placed on another side of the carton in similar font, darker print, and higher contrast than the statements Plaintiff challenges, not tucked into the "fine print." (*See* Compl. at ¶ 77 & Appx. 1.)  Indeed, it is even more implausible that a consumer would have been misled or deceived by the challenged statements on the Probiotic Drinks than the challenged statements in *Perfect Bar*, *General Mills, BA Sports Nutrition* or *Andrade-Heymsfield*.

In order for Plaintiff to have read and relied on the challenged statements, she would have had to look at the different sides and back of the carton (not just the front) and, thus, necessarily would have seen the prominently placed Nutrition Facts which clearly discloses the amount of total sugar and added sugar (if any) in each Probiotic Drink.  It is implausible for Plaintiff to maintain that she read every statement on the carton except the Nutrition Facts, especially when the Complaint alleges Plaintiff is a consumer "interested in health and nutrition" and "Plaintiff was seeking beverages that were healthy to consume."  (Compl. at ¶ 79.)

---

[2] Plaintiff likely will cite cases in which the court found that the disclosure of the sugar content on the package did not preclude the plaintiffs' claims.  However, in each of these cases, and unlike in *Truxel*, the court relied on *Williams* for the proposition that the plaintiff was not required to read the nutrition label, without considering the Ninth Circuit's clarification and limitation, in *Ebner*, of its holding in *Williams.  See, e.g., McMorrow v. Mondelez Int'l, Inc.*, No. 17-CV-02327-BAS-JLB, 2018 WL 3956022, *9 (S.D. Cal. Aug. 17, 2018) (relying on *Williams* without considering clarification and limitation in *Ebner*); *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017) (same).

The Complaint's UCL, CLRA and FAL claims, therefore, should be dismissed because the Complaint fails to sufficiently plead that a reasonable consumer would have been deceived.

### B. Plaintiff Fails to Plausibly Plead That the Probiotic Drinks Contain High Levels of Sugar or That They Are Harmful.

Plaintiff's entire case is premised on her contention that any statements on the Probiotic Drinks about the digestive or other health benefits are "false and misleading in light of the JuiceDrinks' *high sugar content*, since *consuming fruit juices like the JuiceDrinks* increases the risk of metabolic disease, cardiovascular disease, type 2 diabetes, and liver disease, and is further associated with increased all-cause mortality." (Compl. at ¶ 1 (emphasis added).) Thus, the Complaint must plausibly allege that the Probiotic Drinks have a "high sugar content," that consuming "fruit juices" in general "increases the risk of metabolic disease, cardiovascular disease, type 2 diabetes, and liver disease, and is further associated with all-cause mortality," and that those "fruit juices" are "like the JuiceDrinks." The Complaint fails to do so and, thus, should be dismissed for this independent reason as well.

### 1. The Studies on Which the Complaint Relies Do Not Establish the Probiotic Drinks Have a High Sugar Content or Are Unhealthy.

Nowhere does the Complaint plead how much sugar, and what type of sugar (added sugar, free sugar or natural sugar) is considered a "high sugar content." Instead, the Complaint merely makes the conclusory allegation that the Probiotic Drinks have a "high sugar content." (*Id.*)

While the Complaint identifies studies involving "juice" and "sugar containing beverages," the Complaint fails to plead that the "juices" or "sugar containing beverages" involved in those studies are "like" the Probiotic Drinks or how much sugar is in the "juices" and "sugar containing beverages" involved in those studies relative to the amount of sugar in the Probiotic Drinks. (*See id.* at ¶¶

13-63.)  An examination of those studies reveals that none of them provide factual support for Plaintiff's theory that the total sugar and added sugar (if any) content of the Probiotic Drinks is high, excessive, or renders the Probiotic Drinks unhealthy. (*See* Declaration of Ryan T. Hansen in Support of Defendant NextFoods, Inc.'s Motion to Dismiss Plaintiff's Complaint ("Hansen Decl.") ¶¶ 2-52, Exs. 1-51.)[3]

In many cases, the studies Plaintiff relies on for factual support actually undermine her claims.  For example, Plaintiff cites the "Sugar-Sweetened Beverages and Risk of Metabolic Syndrome and Type 2 Diabetes" study in paragraphs 17 and 30 of the Complaint for the proposition that consuming sugar sweetened beverages ("SSB") increase a person's risk for developing metabolic syndrome and type 2 diabetes.  (Compl. at ¶ 17, 30.)  That study defined SSB as products with a 12-ounce serving size, 140-150 calories, and 35-37.5 grams of sugar per serving (full-calorie soda).  (*See* Hansen Decl. ¶ 5, Ex. 4.)  The study found that people who consumed 1-2 servings of those SSB per day (and were thus in the highest quantile) had a higher risk of metabolic syndrome and type 2 diabetes than those who consumed less than one serving (and were thus in the lowest quantile).  (*Id.*)  Not only is the SSB in the study vastly different from the Probiotic Drinks, but if the study could be extrapolated to the Probiotic Drinks, it puts consumers of the Probiotic Drinks

---

[3] NextFoods requests the court take judicial notice of the scientific studies cited in Plaintiff's Complaint, which are attached as Exhibits 1-51 to the Hansen Declaration.  Under the "incorporation by reference" doctrine, a court may look beyond the pleadings without converting a Rule 12(b)(6) motion into one for summary judgment.  *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1160 (9th Cir. 2012).  "Specifically, courts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Id.* (quoting *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007) (court ruling on motion to dismiss must consider entire complaint and other sources incorporated into the complaint by reference as well as judicially noticeable matters); *Riva v. Pepsico, Inc.,* 82 F. Supp. 3d 1045, 1049, n.1 (N.D. Cal. 2015) (granting request for judicial notice of scientific articles "specifically cited to and relied upon" in the complaint in connection with motion to dismiss.).

firmly in the no-risk control group.  A serving of the Probiotic Drinks contains significantly less sugar than one serving of the SSB in the study, and the Probiotic Drinks' label specifically informs consumers to consume just one serving per day. (*See* Compl. Appx. 1.)  Consumers of the Probiotic Drinks would be in the lowest quantile of the study, for which there is no increased health risk and no evidence of excessive sugar consumption.

One of the very statements Plaintiff challenges instructs the consumer to drink one 8-ounce glass of the Probiotic Drink per day - "START YOUR GOODHEALTH GAME PLAN . . . Drink *one 8 oz. glass* of delicious GoodBelly *a day* for 12 days." (Compl. at ¶ 77(a) [emphasis added].)  The Complaint, however, fails to plead that drinking one 8 oz. serving of the Probiotic Drinks per day – as the very statement Plaintiff challenges and on which she alleges she relied instructs the consumer to do – contains high or excessive sugar, contains the levels and types of sugar on which the various studies cited in the Complaint were based, or is associated with the increased risk of any health condition or risk factors associated with those health conditions.  To the contrary, the Complaint establishes that the one 8-ounce glass of the Probiotic Drinks per day is consistent with, and even well below, the American Pediatric Association's recommendation that adults limit their juice intake to 8 ounces per day.  (*See* Compl. at ¶ 64.)  As the Probiotic Drink cartons disclose, the Probiotic Drinks contain between 25% and 32% fruit juice (*see* Compl. at App. 1), meaning that, by drinking one 8-ounce glass of the Probiotic Drinks, a consumer is consuming between 2 ounces and 2.56 ounces of fruit juice while the APA (which the Complaint describes as an authoritative body) recommends adults limit their fruit juice intake to 8 ounces.  (*See* Compl. at ¶ 64.)

Finally, it is not a forgone conclusion that any consumption of added sugar in beverages is inherently unhealthy.  Such theory is "contrary to statements by the FDA that added sugars are 'generally recognized as safe,' 21 C.F.R. § 184.1866, and 'can be a part of a healthy dietary pattern' when not consumed in excess

amounts, 81 Fed. Reg. 33,742, 33,760 (May 27, 2016)." *Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 761 (9th Cir. 2019) (Ikuta, J., concurring in part).

### 2. This Case is Different than Other Cases in Which the Courts Have Found Studies Support Claims.

The case is distinguishable from *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017), *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017), and *McMorrow v. Mondelez Int'l, Inc.*, No. 17-CV-02327-BAS-JLB, 2018 WL 3956022 (S.D. Cal. Aug. 17, 2018), in which the courts found the plaintiffs had sufficiently alleged the health statements on cereals and other breakfast products were false and misleading because of the allegedly high added sugar content, as supported by scientific studies.  First, each of *Krommenhock*, *Hadley* and *McMorrow* alleged that excess "added sugar" in the breakfast products caused the products to be unhealthy, as supported by scientific studies. *Krommenhock*, 255 F. Supp. 3d at 943 ("According to plaintiffs, those products' labels contain health and wellness claims that are false and misleading due to the cereals' high *added* sugar content.") (emphasis added); *Hadley*, 273 F. Supp. 3d at 1059 ("This case concerns statements on the packaging for breakfast cereals and cereal bars sold by Defendant that allegedly indicate that Defendant's products are healthy when excess *added* sugar allegedly causes those products to be unhealthy."); *McMorrow*, 2018 WL 3956022, at *1 ("Plaintiffs' claim that Defendant's . . . advertising is deceptive and misleading because these products contain 'high levels of *added* sugar,' which Plaintiffs argue is unhealthy.") (emphasis added).

Apparently recognizing the low levels of added sugar, or absence of added sugar, in the Probiotic Drinks, the Complaint alleges that the Probiotic Drinks are unhealthy because of the levels of "free sugar" – i.e., total sugar – in each serving. (Compl. at ¶ 1.)  In an attempt to tie the studies Plaintiff's counsel relied on in *Krommenhock*, *Hadley* and *McMorrow* – which involved "added sugar" – to

Plaintiff's claims here – which involve "free sugar"/total sugar – the Complaint makes the conclusory allegation that "free sugars in juice act physiologically identically to added sugars, such as those in sugar sweetened beverages." (Compl. at ¶ 23.) Despite the numerous studies cited in the Complaint, the Complaint fails to plead any support for this conclusory allegation. Thus, while the studies regarding "added sugar" on which Plaintiff relies may have been tied to the "added sugar" based claims in *Krommenhock*, *Hadley* and *McMorrow*, the "added sugar" studies do not sufficiently plead Plaintiff's "free-sugar" based claims in this action. Further, apparently recognizing that the "added sugar" studies are insufficient, and unlike in *Krommenhock*, *Hadley* and *McMorrow*, the Complaint alleges that the Probiotic Drinks are unhealthy because they are "like" the fruit juices in studies the Complaint uses as support for its claims. (Compl. at ¶ 1.) However, as noted above, the Complaint fails to factually allege that the Probiotic Drinks are in fact "like" the fruit juices in the studies on which the Complaint relies, the studies do not support Plaintiff's allegation that the Probiotic Drinks are unhealthy (*see* Hansen Decl. ¶¶ 2-52, Exs. 1-51) and, in any event, the JuiceDrinks only contain between 25% and 32% fruit juice.

Second, and as both courts noted, the plaintiffs in *Krommenhock* and *Hadley* alleged consumers were eating more than one serving of cereal at a time, with "a non-negligible number of people typically consum[ing], in a single meal, double the amount of cereal in a single serving," thus doubling the amount of added sugar intake in a single meal. *Krommenhock*, 255 F. Supp. 3d at 949; *Hadley*, 273 F. Supp. 3d at 1066. Here, the Complaint does *not* allege that consumers are drinking more than one serving of the Probiotic Drinks at a time. Further, any such allegation would contradict the very statement Plaintiff (to the best of her recollection) allegedly read and relied on, instructing consumers to "Drink *one 8 oz. glass* of delicious GoodBelly *a day* for 12 days." (Compl. ¶ 77(a).) A similar instruction to consumers to eat only *one* serving *a day* was not present in

1   *Krommenhock* and *Hadley*.

2       Thus, the Complaint should be dismissed for the independent reason that it

3   fails to sufficiently plead that the Probiotic Drinks contain high levels of sugar or are

4   unhealthy.

5       **C.    Plaintiff Lacks Standing to Bring the UCL, CLRA and FAL
            Claims Because She Fails to Sufficiently Plead That She Suffered
6           Economic Injury.**

7       Since Plaintiff's UCL, CLRA, and FAL claims are grounded in fraud, the

8   Complaint must meet Rule 9(b)'s heightened pleading requirements.  *Andrade-*

9   *Heymsfield*, 2019 WL 3817948, at *5 (citing *Kearns*, 567 F.3d at 1125; *Vess*, 317

10  F.3d at 1103-04).  Further, in order to have standing to bring a UCL, FAL or CRLA

11  claim, Plaintiff must plead she personally suffered economic injury – i.e., that she

12  purchased the Probiotic Drinks – and that she relied on the challenged statements on

13  the Probiotic Drink labels at the time of purchase.  *See Andrade-Heymsfield*, WL

14  3817948, at *2 (reliance) (citations omitted); *Kwikset Corp. v. Superior Ct.*, 51 Cal.

15  4th 310, 323-26 (2011) (economic injury and reliance).  The Complaint fails to meet

16  these pleading requirements and the UCL, CLRA and FAL claims should be

17  dismissed for this reason alone.

18       **1.   Plaintiff Fails to Sufficiently Plead Plaintiff Purchased any of
              the Probiotic Drinks.**
19

20       After 26 pages and 75 paragraphs of allegations, the Complaint for the first

21  time makes allegations regarding Plaintiff's purported "Purchase, Reliance and

22  Injury."  (*See* Compl. at ¶76.)  The Complaint, however, pleads these key legal

23  elements to Plaintiff's claims in only the most general terms, qualified by statements

24  such as, "[a]s best she can recall" and "to the best of her recollection."  (*Id.* at ¶¶ 76-

25  77.)  Such general allegations are insufficient to satisfy Rule 9(b)'s heightened

26  pleading requirements.  Pleading "to the best of her recollection" is vaguer than

27  pleading "on information and belief," which is insufficient to satisfy Rule 9(b),

28  especially where the information is within Plaintiff's knowledge.  *See Moore v.*

*Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

The Complaint merely pleads, "[a]s best she can recall, Plaintiff started purchasing 32 oz. cartons of the JuiceDrinks in 2018, and continued to purchase the products until around the middle of 2019." (Compl. at ¶ 76.)   This pleading is insufficient.  First, Plaintiff should not have to qualify her allegation that she purchased the Probiotic Drinks underlying her Complaint with "[a]s best she can recall." (*See id.*)  This vague pleading leaves open the possibility that Plaintiff did not purchase any of the Probiotic Drinks.  Either Plaintiff purchased the Probiotic Drinks or she did not.  Plaintiff should not be permitted to force NextFoods to expend the significant resources to defend this fraud-based action merely based on her "recollection," which could easily change as recollections are wont to do.

Second, Plaintiff fails to plead with any particularity when she purchased the Probiotic Drinks, other than beginning at some unspecified time in 2018 and "until around the middle of 2019." (*Id.*)  While it may be sufficient to plead a specific time period during which Plaintiff made her purported purchases, it is difficult to be vaguer than the Complaint's alleged time period, which is made even more abstruse by the qualifier "as best she can recall." (*Id.*)  Plaintiff, therefore, has failed to plead the "when" with the requisite particularity for Rule 9(b). *See In Re Hydroxycut Mktg. & Sales Pracs. Litig.*, No. 09CV2492-BTM (AJB), 2010 WL 1838080, at *2 (S.D. Cal. May 5, 2010).

Further, Plaintiff lacks standing also because (a) the Complaint fails to plead which – out of many varieties – of the Probiotic Drinks Plaintiff purchased and (b) the varieties of Probiotic Drinks are *not* substantially the same.  The Complaint defines "JuiceDrinks" as "a line of fruit juice beverages branded GoodBelly Probiotic JuiceDrinks" that have a serving size of 8 fl. oz.[4], and merely alleges that,

---

[4] This allegation excludes GoodBelly shots, which have a serving size of 2.7 oz. and include varieties with no sugar added, 3 grams of sugar, and 30 calories per serving while also containing 20 billion probiotics, and are typically found on the shelf next to other GoodBelly products.

as best she can recall, Plaintiff purchased "32 oz. cartons of the JuiceDrinks." (Compl. at ¶¶ 1, 68, 76.)  As the Complaint alleges in a footnote, this "line" of drinks includes numerous "varieties" (Compl. at ¶ 1 n.1.)  Further, as the product labels establish, these "varieties" have substantially different ingredients and nutrition levels, including different amounts of the total sugar and "added sugar" on which Plaintiff bases her claims.  (Compl. at Appx. 1.)  Some of the "varieties" included in the definition of "JuiceDrinks" contain *no* added sugar.  (*Id.*)

Plaintiff's failure to plead which product she purchased, alone, is grounds for dismissal for failure to meet Rule 9(b)'s particularity requirements.  *Hydroxycut* 2011 WL 1059182, at *2.  Further, where, as here, the Probiotic Drinks contain such different ingredients, including different amounts of the key ingredient the Complaint alleges renders the challenged statements false or misleading, even if the Complaint had specified which product Plaintiff purchased, Plaintiff does *not* have standing to assert claims based on products she did not purchase.  *Grivas v. Metagenics, Inc.*, No. SACV1501838CJCDFMX, 2018 WL 6185977, * 5 (C.D. Cal. Jan. 4, 2018) (granting motion to dismiss where plaintiff failed to allege which of the 17 products at issue he purchased and that the ingredients were substantially similar, even though all 17 products had identical challenged misstatements, noting "[t]his 'is not a case where the composition of the product is immaterial.'" (citing *In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*, No. 13-2438 PSG (PLAX), 2017 WL 385042 (C.D. Cal. Jan. 24, 2017) (products at issue differed significantly because one contained only 6 mg of caffeine and another contained 200 mg)).[5]

---

[5] *See also Dysthe v. Basic Rsch. LLC*, No. CV 09-8013 AG SSX, 2011 WL 5868307, * 4 (C.D. Cal. June 13, 2011) (two products made by same defendant not substantially similar where they did not have identical ingredients and the recommended daily value for Vitamin B6 and Vitamin C were different); *see also Holt v. Foodstate, Inc.*, No. 15CV78 L (JMA), 2015 WL 9592534, * 2 (S.D. Cal. Dec. 31, 2015) (same); *c.f. Hunter v. Nature's Way Prod., LLC*, No. 16CV532-WQH-BLM, 2016 WL 4262188 (S.D. Cal. Aug. 12, 2016), *on reconsideration*, No. 16-CV-0532-WQH-AGS, 2018 WL 340233 (S.D. Cal. Jan. 9, 2018) (finding, in case based on saturated fat content, complaint sufficiently pled purchased and unpurchased products were substantially similar where all products contained the

As the court stated in *Dysthe*, "just because an Old Fashioned and a Manhattan both have bourbon doesn't mean they're the same drink." *Dysthe*, 2011 WL 5868307, at *5. Likewise, here, just because two varieties of the Probiotic Drinks contain the same probiotic cultures and some degree of sugar "doesn't mean they're the same drink." *Id.* Thus, since the Complaint fails to sufficiently plead (a) Plaintiff purchased any of the Probiotic Drinks, (b) when she purchased the Probiotic Drinks, and (c) which of the Probiotic Drinks she purchased, the Complaint fails to sufficiently plead Plaintiff has standing to base a claim on any of the Probiotic Drinks.

### 2. Plaintiff Fails to Sufficiently Plead Plaintiff Relied on Any of the Challenged Statements.

As to Plaintiff's purported reliance on the challenged statements, the Complaint merely alleges, "[s]pecifically, to the best of her recollection, when deciding to purchase the JuiceDrinks, Plaintiff at various times read and relied on at least the following statements on the products' packaging . . ." and goes on to list four statements purportedly on the labels. (Compl. at ¶ 77.) This pleading is insufficient. Indeed, the words "specifically" and "to the best of her recollection" are oxymorons. As with Plaintiff's purported purchases, Plaintiff cannot qualify allegations as to the statements on which she relied and which form the basis of her claims with, "to the best of her recollection." This vague pleading leaves open the possibility that Plaintiff did not read or rely on any of these statements. Plaintiff "is not permitted to support a claim alleging misleading product packaging with statements that [s]he never read or relied upon when making [her] purchase." *Andrade-Heymsfield*, 2020 WL 5513552, at *2 (citing *Dvora v. Gen. Mills, Inc.*, No. CV 11–1074–GW(PLAx), 2011 WL 1897349, at *8 (C.D. Cal. May 16, 2011)). /////

---

same amount (13 grams) of saturated fat).

**D.    Certain of the Challenged Statements are Nonactionable.**

Certain of the statements Plaintiff challenges are nonactionable because they constitute legal puffery.  "[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion."  *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).

"[G]eneralized, vague, and unspecific assertions constitut[e] mere 'puffery.'" *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003).  "Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim."  *Newcal*, 513 F.3d at 1053 (citing *Cook, Perkiss, & Liehe v. Northern California Collection Service, Inc.*, 911 F.2d 242, 245 (9th Cir.1990)).  "[A] statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery."  *Id.*

Here, the following statements Plaintiff challenges are not quantifiable, but rather constitute generalized, vague, and unspecific assertions: (a) "START YOUR GOODHEALTH GAME PLAN . . . Drink one 8 oz. glass of delicious GoodBelly a day for 12 days" and (b) "Reboot your belly, then make GoodBelly your daily drink to keep your GoodHealth going. Because when your belly smiles the rest of you does too."  These are classic nonactionable statements.  The term "GOODHEALTH GAME PLAN" is not quantifiable or measurable; nor is "GoodHealth."  Further, it is not possible to specifically measure or quantify the "reboot[ing of] your belly," whether your "belly smiles" or whether the "rest of you [smiles] too" to support a legal claim.  Thus, Plaintiff's claims as to these nonactionable statements should be dismissed.

/////

/////

### E.    Plaintiff Fails to State a Claim for Breach of Express Warranty.

"A breach of the express warranty claim requires that a plaintiff allege the 'exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff's injury.'" *Andrade-Heymsfield*, 2019 WL 3817948, at * 9 (quoting *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142, 229 Cal.Rptr. 605 (1986)). "To constitute a warranty and be actionable, the statement must be 'specific and unequivocal.'" *Id.* (quoting *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1236 (C.D. Cal. 2008).

The Complaint, however, fails to plead which of the challenged statements constituted a warranty and what the exact terms of that warranty were.  (Compl. at ¶¶ 138-149.)  Rather, the Complaint alleges in the most conclusory fashion that, "[t]hrough the JuiceDrinks' labeling, NextFoods made affirmations of fact or promises, or description of goods, that, *inter alia*, the JuiceDrinks are beneficial to health" and that "NextFoods breached its express warranties by selling JuiceDrinks that are not healthful, but rather contain high levels of free sugar that are likely to increase the risk of chronic diseases, and harm rather than promote bodily health." (Compl. at ¶¶ 139, 141.)  As explained in more detail above, Plaintiff has pled no facts showing that the Probiotic Drinks have high levels of sugar or are likely to increase the risk of any chronic diseases.  In fact, the studies Plaintiff relies on state the opposite when considering the sugar content in the Probiotic Drinks compared to the sugar content of drinks in the studies.  (*See supra* Part IV.B.1.)  Further, for the same reasons set forth above that the Complaint fails to sufficiently plead Plaintiff relied on the alleged false and misleading statements, the Complaint fails to sufficiently plead that Plaintiff relied on any warranty.  (*See supra* Part IV.C.2.)  Thus, the Court should dismiss Plaintiff's express warranty claim.

/////

/////

/////

**F.     Plaintiff Fails to State a Claim for Breach of Implied Warranty.**

Plaintiff's breach of the implied warranty of merchantability fails for the same reasons as the express warranty claims.  *See Andrade-Heymsfield*, 2019 WL 3817948, at * 9.  Further, "[t]he implied warranty of merchantability does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality.'" *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 878 (N.D. Cal. 2015) (quoting *Am. Suzuki Motor Corp.*, 37 Cal. App. 4th 1291, 1296 (1995)).  Thus, to state a claim, a plaintiff must allege a "fundamental defect that renders the product unfit for its ordinary purpose." *Id.*  The Complaint fails to allege any such fundamental defect and, thus, the claim for breach of the implied warranty of merchantability should be dismissed for this reason as well.

Additionally, "[t]he general rule is that privity of contract is required in an action for breach of . . . implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039,1058-59 (2008) (affirming dismissal of warranty claim); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("[a] buyer and seller stand in privity if they are in adjoining links of the distribution chain. Thus, an end consumer . . . who buys from a retailer is not in privity with a manufacturer [and cannot state an implied warranty claim].")  The only exception to this privity requirement is where the product physically injures the plaintiff.  *Andrade-Heymsfield*, 2019 WL 3817948, at * 9 (citing *Hammock v. Nutramarks, Inc.*, 2016 WL 4761784, at *5 (S.D. Cal. Sept. 12, 2016)).

Here, Plaintiff does not allege that she purchased anything from NextFoods. Instead, she alleges (as best she can recall) that she purchased the Probiotic Drinks at "local stores."  (Compl. at ¶ 76.)  Thus, Plaintiff is not in privity with NextFoods. *Clemens*, 534 F.3d at 1023.  Further, the Complaint does not allege a physical

injury.  Thus, the breach of the implied warranty of merchantability should be dismissed for these reasons as well.  *Andrade-Heymsfield*, 2019 WL 3817948, at * 9

### G.   Plaintiff Fails to State a Claim for Restitution.

Plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Plaintiff's boilerplate statement that her "legal remedies are inadequate" is an unsupported legal conclusion the Court need not accept and is insufficient to carry her burden.  *See Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *see also Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2021 WL 3487117, at *12-13 (N.D. Cal. Aug. 9, 2021) (dismissing restitution claims where complaint alleged plaintiff "lack[ed] an adequate remedy at law" but "fail[ed] to allege any specific facts" establishing damages were inadequate).

Plaintiff's purported injury, having lost money by purchasing or overpaying for a product in reliance on misleading marketing, is "exactly the type of injury for which legal remedies are appropriate." *Sharma v. Volkswagen*, No. 20-CV-02394-JST, 2021 WL 912271, at *8 (N.D. Cal. Mar. 9, 2021) (citing cases); *see also Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV2000769CJCGJSX, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (dismissing restitution claim because "there is nothing in the [complaint] to suggest that monetary damages would not make Plaintiff or the putative class whole."); *Zeiger v. WellPet LLC*, 2021 WL 756109, at *21 (N.D. Cal. Feb. 26, 2021) (holding "[d]amages would compensate [the plaintiff] for his past purchases" made in alleged reliance on misleading packaging).  Indeed, Plaintiff's CLRA claim seeks "actual damages resulting from purchases of the JuiceDrinks sold throughout the Class Period to all Class Members[.]" (Compl. ¶ 136.)  Plaintiff "fails to explain how the same amount of money for the exact same harm is inadequate or incomplete…"  *Sonner*, 971 F.3d at 844; *see also Julian v. TTE Tech., Inc*., No. 20-CV-02857-EMC, 2020 WL 6743912, at *5 (N.D. Cal. Nov.

17, 2020) (dismissing restitution claims where "Plaintiffs' claim for damages and restitution are not really different").

To the extent Plaintiff contends that damages are inadequate because she can recover in equity *more* than the amount that she paid to purchase JuiceDrinks, she is incorrect as a matter of law.  The object of restitution[6] under the UCL, FAL, and CLRA "is to restore the status quo by returning to the plaintiff funds in which he or she *has an ownership interest*."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (emphasis added).  Disgorgement is an available remedy under these statutes "*only to the extent that it constitutes restitution*."  *Id.* at 1145 (emphasis added). "[N]onrestitutionary disgorgement, which focuses on the defendant's unjust enrichment…is not available under the UCL or the other statutes[.]" *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d at 1072; *Cf. TopDevz, LLC v. LinkedIn Corp.*, No. 20-CV-08324-SVK, 2021 WL 3373914, at *5 (N.D. Cal. Aug. 3, 2021) (cautioning plaintiffs to "be prepared to address the principle that 'nonrestitutionary disgorgement is not available under the UCL'" in attempting to plead inadequacy of legal remedies).

Plaintiff's claims for nonrestitutionary disgorgement should be dismissed with prejudice.  *See Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *8 (N.D. Cal. Dec. 13, 2012) (dismissing claim for "nonrestitutionary disgorgement" as prohibited under the UCL and FAL); *see also Henderson v. Gruma Corp.*, 2011 WL 1362188, at *9 (C.D. Cal. Apr. 11, 2011) (striking prayer for "*all* monies, revenues, and profits obtained by means of any wrongful act or practice" as seeking "nonrestitutionary disgorgement").  And because Plaintiff fails to establish legal remedies are inadequate, her claims for equitable restitution under should be dismissed entirely.  *See Sonner*, 971 F.3d at 844.

---

[6] Restitution under the UCL, FAL, and CLRA provides "the same relief under the same standards."  *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020) (citing *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006)).

### H.   Plaintiff Lacks Article III Standing to Seek Injunctive Relief.

Plaintiff must satisfy the standing requirements imposed by Article III of the Constitution with respect to each form of relief sought. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Lack of Article III standing requires dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011). In deciding a motion to dismiss under Rule 12(b)(1) for lack of standing, the Court must accept as true the factual allegations in the complaint but need not accept legal conclusions. *Lacano Investments, LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014).

A plaintiff seeking prospective injunctive relief "must demonstrate that [s]he has suffered or is threatened with a 'concrete and particularized' legal harm ... coupled with 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The plaintiff must establish a "real and immediate threat of repeated injury." *O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S. Ct. 669, 38 L.Ed.2d 674 (1974).

Courts have held that a plaintiff who claims to have been misled by marketing statements in the past but has learned information "that enables her to evaluate product claims and make appropriate purchasing decisions going forward" faces no threat of future injury. *See Jackson v. Gen. Mills, Inc.*, No. 18CV2634-LAB (BGS), 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020) (citing cases). For example, a plaintiff who alleged coconut oil packaging misleadingly conveyed that the product was "healthy" when in fact it was actually detrimental to health due to high fat content lacked standing to seek injunctive relief because he could "in the future simply look at the label on Defendant's coconut oil, see that it is still in fact made of the singular ingredient that makes it allegedly unhealthy – coconut oil – and put it back." *Shanks v. Jarrow Formulas, Inc*., No. LACV1809437PAAFMX, 2019 WL 7905745, at *5 (C.D. Cal. Dec. 27, 2019). Similarly, plaintiffs who claimed a

defendant misleadingly marketed snack products as "healthy" but did "not dispute the veracity of the nutrition facts or ingredient labeling on the products" faced no threat of being misled again since they could "check the nutrition facts or ingredient labeling to assess if the products still contain" the purportedly unhealthy ingredients. *Stewart v. Kodiak Cakes, LLC*, No. 19-CV-2454-MMA (MSB), 2021 WL 1698695, at *10 (S.D. Cal. Apr. 29, 2021).

Plaintiff has not alleged a threat of future injury.  The Probiotic Drinks' packaging identifies the amount of juice and the amount of sugar in the products. (Compl., Appx 1.)  If Plaintiff wants to purchase the Probiotic Drinks again only if they meet her certain criteria for juice and/or sugar content, she can easily ascertain from the packaging whether the products still contain the juice and/or sugar that (according to Plaintiff) renders them unhealthy.  Accordingly, Plaintiff's claims for injunctive relief must be dismissed as the Court lacks subject matter jurisdiction to adjudicate such claims.

## V.    CONCLUSION

For the reasons set forth herein, NextFoods' motion to dismiss the Complaint with prejudice should be granted in its entirety.

Dated: October 15, 2021                **BROWNLIE HANSEN LLP**

_____

RYAN T. HANSEN
ryan.hansen@brownliehansen.com
Attorneys for Defendant NextFoods, Inc.