**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVLYN ANDRADE-HEYMSFIELD, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>NEXTFOODS, INC.,<br><br>Defendant. | Case No.: 21-cv-1446-BTM-MSB<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Judge:  Hon. Barry Ted Moskowitz<br>Hearing Date:  Oct. 27, 2023, 11:00 a.m.<br><br>PER CHAMBERS, NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................... 1

PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS ................ 1

THE SETTLEMENT ........................................................................................... 3

    I.     The Settlement Class ........................................................................ 3

    II.    Benefits for the Settlement Class .................................................... 3

        A.    $1.25 Million Non-Reversionary Settlement Fund ................ 3

        B.    Changes to GoodBelly JuiceDrink's Labeling .................... 4

    III.   Class Notice and Claims Administration ......................................... 4

    IV.   The Settlement's Release .................................................................. 5

    V.    Opting Out ....................................................................................... 5

    VI.   Objecting ......................................................................................... 5

    VII.  Attorneys' Fees, Costs, and Service Awards ................................... 6

    VIII. Timeline .......................................................................................... 7

ARGUMENT ....................................................................................................... 8

    I.     The Court Should Certify the Settlement Class ............................... 9

        A.    The Requirements of Rule 23(a) are Satisfied ..................... 9

            1.    Numerosity .................................................................. 9

            2.    Commonality ............................................................... 9

            3.    Typicality .................................................................. 10

i

4.    Adequacy ..................................................... 10

B.    The Requirements of Rule 23(b)(3) are Satisfied ................................. 11

1.    Predominance........................................................... 11

2.    Superiority................................................................. 13

II.    The Court Should Approve the Proposed Settlement ..................................... 14

A.    The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations .................................................................. 15

B.    The Settlement Does Not Grant Preferential Treatment...................... 16

C.    The Settlement Falls within the Range of Possible Approval .............. 17

1.    The *Churchill Village* Factors Favor Preliminary Approval ...................................................................... 17

2.    The Monetary Relief is Fair in Relation to Potential Damages........................................................................ 21

3.    The Injunctive Relief is Appropriate and Meaningful .............. 22

III.    The Court Should Approve the Class Notice and Notice Plan ...................... 23

CONCLUSION ......................................................................... 24

ii

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. Hyland's, Inc.*,
  No. 12-cv-1150 DMG (MANx) (C.D. Cal.) ....................................................18

*Allen v. Similasan Corp.*,
  2017 WL 1346404 (S.D. Cal. Apr. 12, 2017).............................................passim

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................11, 12

*Andrade-Heymsfield v. NextFoods, Inc.*,
  2022 WL 1772262 (S.D. Cal. Apr. 27, 2022)............................................1, 23

*Andrade-Heymsfield v. NextFoods, Inc.*,
  2023 WL 2576770 (S.D. Cal. Mar. 20, 2023) ...................................................1

*Andrade-Heymsfield v. NextFoods, Inc.*,
  2023 WL 3880076 (S.D. Cal. June 5, 2023)......................................................2

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ..................................................................20

*Bruno v. Quten Research Inst., LLC*,
  2013 WL 990495 (C.D. Cal. Mar. 13, 2013)....................................................22

*Butler v. Porsche Cars N. Am., Inc.*,
  2017 WL 1398316 (N.D. Cal. Apr. 19, 2017) ..................................................13

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) .........................................................................15

*Castro v. Paragon Indus., Inc.*,
  2020 WL 1984240 (E.D. Cal. Apr. 27, 2020) ..................................................12

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004).....................................................................14, 17

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .........................................................................14

iii

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ................................................................................13

*Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021) ........................................23

*Edwards v. Nat'l Milk Producers Fed'n*,
   2017 WL 3623734 (N.D. Cal. June 26, 2017) ................................................23

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ................................................................10

*Farar v. Bayer AG*,
   No. 14-cv-4601 (N.D. Cal.) ....................................................................18

*Guttmann v. Ole Mexican Foods, Inc.*,
   2016 WL 9107426 (N.D. Cal. Aug. 1, 2016) ................................................18

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ......................................................10

*Hale v. Manna Pro Prod., LLC*,
   2020 WL 3642490 (E.D. Cal. July 6, 2020) ................................................15

*Hale v. State Farm Mut. Auto. Ins. Co.*,
   2016 WL 4992504 (S.D. Ill. Sept. 16, 2016) ..................................................9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................9, 13, 14

*Hanson v. Welch Foods Inc.*,
   2022 WL 1133028 (N.D. Cal. Apr. 15, 2022) ................................................11

*Harris v. Vector Mktg. Corp.*,
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ................................................17

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ....................................................................5

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ..............................................12, 22

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) ...................................................................6, 15, 16

*In re Chinese-Manufactured Drywall Prods. Liability Litig.*,
 424 F. Supp. 3d 456 (E.D. La. 2020)..................................................15, 16

*In re Hyundai & Kia Fuel Economy Litig.*,
 926 F.3d 539 (9th Cir. 2009) ...................................................................8, 11

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020)...........................7

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) ...........................................................................22

*In re Mercury Interactive Corp. Secs. Litig.*,
 618 F.3d 988 (9th Cir. 2010) .............................................................................7

*In re Netflix Privacy Litig.*,
 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013).................................................7

*In re Nissan Motor Corp. Antitrust Litig.*,
 552 F.2d 1088 (5th Cir. 1977) .........................................................................23

*In re NJOY, Inc. Consumer Class Action Litig.*,
 120 F. Supp. 3d 1050 (C.D. Cal. 2015) ..........................................................13

*In re Pac. Enters. Sec. Litig.*,
 47 F.3d 373 (9th Cir.1995) ...............................................................................20

*In re Pharm. Indus. Average Wholesale Price Litig.*,
 252 F.R.D. 83 (D. Mass. 2008).........................................................................19

*In re Regulus Therapeutics Inc. Sec. Litig.*,
 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020)...........................................passim

*In re Tableware Antitrust Litig.*,
 484 F. Supp. 2d 1078 (N.D. Cal. 2007).........................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011)..................................................7

v

*In re Zynga Inc. Secs. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .......................................................15

*Jabbari v. Farmer*,
  965 F.3d 1001 (9th Cir. 2020) .......................................................11

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) .......................................................9

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. Mar. 9, 2020) .......................................................11

*Kutzman v. Derrel's Mini Storage, Inc.*,
  2020 WL 406768 (E.D. Cal. Jan. 24, 2020) .......................................................11

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) .......................................................20

*Lloyd v. Navy Fed. Credit Union*,
  2019 WL 2269958 (S.D. Cal. May 28, 2019) .......................................................7

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) .......................................................11

*Makaeff v. Trump Univ., LLC*,
  309 F.RD. 631 (S.D. Cal. 2015) .......................................................19

*Mandalevy v. Bofi Holding Inc.*,
  2022 WL 4474263 (S.D. Cal. Sept. 26, 2022) .......................................................9, 10

*Manner v. Gucci Am., Inc.*,
  2016 WL 1045961 (S.D. Cal. Mar. 16, 2016) .......................................................14, 15, 20, 21

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) .......................................................18

*McMorrow v. Mondelez Int'l, Inc.*,
  2021 WL 5417183 (S.D. Cal. Nov. 19, 2021) .......................................................4

*McMorrow v. Mondelez Int'l, Inc.*,
  2022 WL 1056098 (S.D. Cal. Apr. 8, 2022) .......................................................8, 11, 21, 22

*Medellin v. Ikea U.S.A. W., Inc.*,
  672 Fed. App'x 782 (9th Cir. 2017) ...................................................19

*Mezzadri v. Med. Depot, Inc.*,
  2016 WL 5107163 (S.D. Cal. May 12, 2016)...................................9

*Milan v. Clif Bar & Co.*,
  340 F.R.D. 591 (N.D. Cal. 2021)...........................................11, 13

*Moreno v. Beacon Roofing Supply, Inc.*,
  2020 WL 1139672 (S.D. Cal. Mar. 9, 2020) ...............................12

*Moriarty v. Am. Gen. Life Ins. Co.*,
  2022 WL 6584150 (S.D. Cal. Sept. 27, 2022)...............................9

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*,
  2016 WL 2610107 (S.D. Cal. May 6, 2016)...................................19

*Pelzer v. Vassalle*,
  655 F. App'x 352 (6th Cir. 2016) .................................................7

*Racies v. Quincy Bioscience, LLC*,
  No. 15-cv-292 (N.D. Cal.) ...........................................................18

*Rasario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) .......................................................9

*Rodriguez v. Bumble Bee Foods, LLC*,
  2018 WL 1920256 (S.D. Cal. Apr. 24, 2018)................................19

*Rodriguez v. W. Pub'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .........................................16, 19, 20

*Scheuneman v. Arena Pharms., Inc.*,
  2020 WL 3129566 (S.D. Cal. June 12, 2020)................................13

*Shannon v. Sherwood Mgmt. Co.*,
  2020 WL 2394932 (S.D. Cal. May 12, 2020)..................................6

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .......................................................17

*Andrade-Heymsfield v. NextFoods, Inc.*, Case No.: 21-cv-1446-BTM-MSB
MOTION FOR PRELIMINARY APPROVAL

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) .......................................................................13

*Testone v. Barlean's Organic Oils, LLC*,
   2023 WL 2375246 (S.D. Cal. Mar. 6, 2023) ...................................11, 18, 21

*Tschudy v. J.C. Penney Corp., Inc.*,
   2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) ....................................................19

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ...........................................................................................11

*Vasquez v. Coast Valley Roofing, Inc.*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) ..........................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................................9

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
   2016 WL 8578913 (C.D. Cal. Dec. 2, 2016) ..................................................18

*Watkins v. Hireright, Inc.*,
   2016 WL 1732652 (S.D. Cal. May 2, 2016)......................................14, 18, 19

*Willis v. City of Seattle*,
   943 F.3d 882 (9th Cir. 2019) ..............................................................................9

*Winters v. Two Towns Ciderhouse, Inc.*,
   2020 WL 5642754 (S.D. Cal. Sept. 22, 2020)................................5, 17, 19, 22

*Yeoman v. Ikea U.S.A. W., Inc.*,
   2014 WL 7176401 (S.D. Cal. Dec. 4, 2014) ..................................................19

**Rules**

Fed. R. Civ. P. 23(a)(3) .............................................................................................10

Fed. R. Civ. P. 23(a)(4) .............................................................................................10

Fed. R. Civ. P. 23(e)....................................................................................................8

Fed. R. Civ. P. 23(e)(2) ........................................................................................8

Fed. R. Civ. P. 23(h) ............................................................................................6

**Other Authorities**

Fed. R. Civ. P. 23(e), advisory committee note (2003 amendment) ....................16

Fed. R. Civ. P. 23, advisory committee's note (2018 amendment) ......................17

*Andrade-Heymsfield v. NextFoods, Inc.*, Case No.: 21-cv-1446-BTM-MSB
MOTION FOR PRELIMINARY APPROVAL

## INTRODUCTION

After two years of litigation, the parties have settled this action and a related one filed in New York,[1] on a nationwide class basis. Defendant NextFoods, Inc. has agreed to establish a non-reversionary common fund of $1.25 million for the Settlement Class and to make significant labeling changes—even though Plaintiff Evlyn Andrade-Heymsfield's claim for injunctive relief had been dismissed. Given this relief, especially in light of some key risks the Class faced at trial, the Court should find that the proposed Settlement falls within the range of reasonableness and grant preliminary approval.

## PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS

Ms. Andrade-Heymsfield filed this action in August 2021 alleging NextFoods "sells a line of fruit juices . . . 'that expressly or implicitly convey the message that the JuiceDrinks are healthy,'" which she alleged was "deceptive . . . because they contain 'excessive amounts of free sugar.'" *Andrade-Heymsfield v. NextFoods, Inc.*, 2023 WL 2576770, at *1 (S.D. Cal. Mar. 20, 2023) ["*Andrade-Heymsfield II*"] (Moskowitz, J.) (quoting Dkt. No. 1, Compl., ¶¶ 1, 10, 78). As a result, she alleged NextFoods' "violations of the Unfair Competition Law ('UCL'); False Advertising Law ('FAL'); and Consumers Legal Remedies Act ('CLRA'); and breaches of express and implied warranties." *Id.* (internal citations omitted).

In October 2021, NextFoods moved to dismiss the Complaint. Dkt. No. 7. In April 2022, the Court granted the motion without prejudice. *Andrade-Heymsfield v. NextFoods, Inc.*, 2022 WL 1772262 (S.D. Cal. Apr. 27, 2022) ["*Andrade-Heymsfield I*"] (Moskowitz, J.).

In May 2022, Ms. Andrade-Heymsfield filed a First Amended Complaint, Dkt. No. 14 ("FAC"), and in July 2022, NextFoods moved to dismiss it, Dkt. No. 18. In March 2023, the Court denied the motion. *Andrade-Heymsfield II*, 2023 WL 2576770. Shortly thereafter, NextFoods filed its Answer. Dkt. No. 25.

---

[1] *Gates v. NextFoods, Inc.*, No. 5:23-cv-00530-FJS-ATB (N.D.N.Y., filed April 27, 2023). On August 22, 2023, Plaintiff Valerie Gates voluntarily dismissed the action without prejudice in light of the proposed Settlement, in which she is named as a Class Representative. *See* Gates Decl. ¶ 2 & Exs. 1-2 (Complaint and Notice of Dismissal).

On March 24, 2023, the parties conducted their Rule 26(f) Conference, *see* Dkt. No. 27, Joint R. 26(f) Discovery Plan at 1, and three days later, Plaintiff served a first set of Interrogatories and Document Requests on NextFoods, *see* Declaration of Jack Fitzgerald ("Fitzgerald Decl.") ¶ 3.

On April 17, 2023, NextFoods moved for reconsideration of the Court's Order denying its Motion to Dismiss the First Amended Complaint. Dkt. No. 30. On April 26, it served its responses to Plaintiff's first discovery requests. *See* Fitzgerald Decl. ¶ 3.

On April 27, 2023, the parties attended an Early Neutral Evaluation with Magistrate Judge Michael S. Berg. Dkt. No. 35. With NextFoods' motion pending, the parties were far apart and the case did not settle. *See id.*; *see also* Fitzgerald Decl. ¶ 9. The day before the ENE, however, NextFoods had produced an insurance policy under which, Plaintiff learned, it had tendered its defense of the action. *Id.* ¶ 10. On June 9, Plaintiff's counsel sent NextFoods' insurer a 13-page policy limit demand letter that discussed the merits of the case and damages; the likelihood of class certification; the extent to which the policy covered the claims; and the bad-faith implications if the insurer refused to settle. *Id.* ¶ 11.

Shortly before Plaintiff sent the letter, the Court denied NextFoods' Motion for Reconsideration. *Andrade-Heymsfield v. NextFoods, Inc.*, 2023 WL 3880076 (S.D. Cal. June 5, 2023) (Moskowitz, J.). At around the same time, the parties began discussing labeling changes on which they might be able to agree to settle the action. When those discussions were productive, the parties scheduled a Settlement Conference with Judge Berg, this time to include the insurer. *See* Fitzgerald Decl. ¶ 12 (citing Dkt. No. 48). To conserve resources that might go toward a settlement, the parties requested the pending deadlines be continued until after the Settlement Conference. *Id.* (citing Dkt. No. 49). Given these advancements, the parties were able to reach the proposed settlement during an August 18, 2023 Settlement Conference with Judge Berg. *Id.* ¶ 13 (citing Dkt. No. 51).

# THE SETTLEMENT

## I.    The Settlement Class

The Settlement Class is comprised of all persons in the United States who, between August 13, 2017 and the Settlement Notice Date (the "Class Period"), purchased in the United States, for household use and not for resale or distribution, one of the Class Products, that is, any flavor of NextFoods' GoodBelly Probiotic JuiceDrink sold in a 1 Quart (32 oz.) container *See* Fitzgerald Decl. Ex. 1, Settlement Agreement ("SA") ¶¶ 1.6, 1.11, 1.12 (defining Class, Class Period, and Class Products).[2]

## II.    Benefits for the Settlement Class

### A.    $1.25 Million Non-Reversionary Settlement Fund

As consideration for Class Members' release, NextFoods will establish a $1,250,000 non-reversionary common fund (the "Settlement Fund") to pay Class Notice and Claims Administration; Court-approved attorneys' fees, expenses, and service awards; and Class Member claims. *See* SA ¶ 2.1.

To obtain monetary relief, a Class Member must submit an online or hard copy Claim Form. SA ¶ 4.1. After providing identifying information, the Claimant will be asked to estimate the number of Class Products purchased since August 2017. *Id.* ¶ 4.1(a)-(b). Claimants will be entitled to a Cash Award of $1 per Class Product, with a cap of 5 Products without proof of purchase. *Id.* ¶ 4.1(c). Claimants who submit valid proof of purchase of more than 5 Class Products will be entitled to a Cash Award of $1 per Class Product on the full number purchased during the Class Period. *Id.* Cash Awards are subject to *pro rata* adjustments (reductions or increases) if claims exceed or are less than the money remaining in the Settlement Fund after all expenses. *Id.* ¶¶ 4.1(d), 4.5. Any amounts remaining uncleared after 180 days will be provided to Class Member Claimants in a supplemental distribution, or donated *cy pres* to the UCLA Resnick Center for Food Law & Policy, subject to the Court's

---

[2] Capitalized terms used herein and not otherwise defined have the same meaning ascribed to them in the Settlement Agreement.

approval. *See id.* ¶ 4.7. Because of its work, the Resnick Center has previously been approved as a *cy pres* recipient in similar cases. *See* Fitzgerald Decl. ¶¶ 28-30.

**B.    Changes to GoodBelly JuiceDrink's Labeling**

As further consideration for the Class's release, NextFoods has agreed to, for at least 36 months, (i) refrain from using "GoodHealth" on the JuiceDrinks' label, SA ¶ 5.1.1; (ii) limit any reference to "overall health" or "overall wellness" to being tied directly to digestive health (for example, rather than stating the product "may help promote healthy digestion and overall wellness," stating the product "may help promote healthy digestion, which in turn can promote overall wellness"), *id.* ¶ 5.1.2; and (iii) any time "overall health" or "overall wellness" is used, include an asterisk to language on the products label reading:

> [LP299v] can be found naturally in the intestinal system, and may help promote healthy digestion when consumed daily as part of a nutritious diet and healthy lifestyle. GoodBelly is a food product and not a treatment or cure for any medical disorder or disease. If you have any concerns about your digestive system, please consult your healthcare professional. ***See Nutrition Facts Box for sugar content***."

*Id.* ¶ 5.1.3 (emphasis added). While most of this language already appears on the Class Product labels, as part of the Settlement NextFoods has specifically agreed to add "See Nutrition Facts Box for sugar content" to the explanatory language. Fitzgerald Decl. ¶ 19.

**III.    Class Notice and Claims Administration**

Subject to the Court's approval, the parties have retained Postlethwaite & Netterville ("P&N") as the Class Administrator to effect Class Notice and Claims Administration. *See* SA ¶ 6.1 (listing duties of Class Administrator); Fitzgerald Decl. ¶ 22. P&N has been administering class action notice and claims since 1999 and has extensive experience in state and federal courts. *See* Declaration of Brandon Schwartz ("Schwartz Decl.") ¶¶ 2-5 & Exs. A-B. Courts in this district have recently approved P&N as a class administrator for other consumer fraud class action settlements. *See McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 5417183, at *2 (S.D. Cal. Nov. 19, 2021); *Winters v. Two Towns Ciderhouse, Inc.*, 2020 WL

4

5642754, at *5-6 (S.D. Cal. Sept. 22, 2020). And P&N has served as the Class Administrator for the settlement of several similar lawsuits, including *Krommenhock*, *Hadley*, *Milan*, and *McMorrow*. Fitzgerald Decl. ¶ 22.

The Settlement provides that Class Notice will be effectuated through a Notice Plan designed by the Class Administrator to comply with the requirements of Rule 23 and approved by the Parties and Court. SA ¶ 6.3. P&N has offered a Notice Plan that meets these requirements. *See* Schwartz Decl. ¶¶ 6-27; *see also infra* Point III. On behalf of NextFoods, P&N will also serve CAFA notice upon the appropriate officials within 10 days after the filing of this motion, as required by 28 U.S.C. § 1715(b). *See* SA ¶ 6.5.

## IV.    The Settlement's Release

Upon the Effective Date, each Class Member who has not opted out will be deemed to have released NextFoods and related entities from past, present, and future claims the Class Member has or may have against NextFoods arising out of the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Action regarding the Class Products, which have been, or which could have been asserted in the Action. *See* SA ¶ 8.1. Thus, the release complies with the applicable standard. *See Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) (claims released should be limited to those based on the identical factual predicate or which depend on the same set of facts alleged in the Complaint).

## V.    Opting Out

Class Members who wish to be excluded must submit a Request for Exclusion (or "Opt-Out Form") to the Class Administrator, postmarked no later than the Opt-Out Deadline. "Mass" or "class" opt-outs are not permitted. All Class Members who submit a timely, valid Request for Exclusion will not be bound by the terms of the Agreement, whereas all Class Members who do not submit a timely, valid Request for Exclusion will be bound by the Agreement and any Judgment. *Id.* ¶ 6.6.

## VI.    Objecting

Settlement Class Members wishing to object must, by the Objection Deadline, file or mail their written objections to the Court. *Id.* ¶ 6.7.1. An objection must contain (i) a caption

5

or title that clearly identifies this action, and that the document is an objection; (ii) information sufficient to identify and contact the objecting Class Member or his or her attorney, if represented; (iii) information sufficient to establish the person's standing as a Settlement Class Member; (iv) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection; (v) the objector's signature; and (vi) the signature of the objector's counsel, if any. *Id*. ¶ 6.7.2. Class Members who object through an attorney must sign either the Objection themselves or execute a separate declaration authorizing the Objection. *Id.* ¶ 6.7.3. Class Members who both object and opt out will be deemed to have opted out, and thus be ineligible to object. *Id.* ¶ 6.7.4. Objectors are permitted to appear at the final approval hearing and are requested, but not required, in advance of the Final Approval Hearing, to file with the Court a Notice of Intent to Appear. *Id.* ¶ 6.7.5. The parties have the right, but not the obligation, to respond to any objections. *Id.* ¶ 6.7.7.

## VII. Attorneys' Fees, Costs, and Service Awards

"'In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.'" *Shannon v. Sherwood Mgmt. Co.*, 2020 WL 2394932, at *10 (S.D. Cal. May 12, 2020) (quoting Fed. R. Civ. P. 23(h)). "'Where a settlement produces a common fund for the benefit of the entire class,' as here, 'courts have discretion to employ either the lodestar method or percentage-of-recovery method' to determine the reasonableness of attorneys' fees." *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *3 (S.D. Cal. Oct. 30, 2020) (Moskowitz, J.) ["*Regulus*"] (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)).

The Settlement Agreement provides that the Class Representatives and their counsel will seek Court approval for service awards and attorneys' fees and costs, to be paid from the Settlement Fund. SA ¶ 3. Here, the Class Representatives will likely request service awards of $5,000 each. *See Regulus*, 2020 WL 6381898, at *8 ("Service awards as high as $5,000 are presumptively reasonable in this judicial district." (citing *Lloyd v. Navy Fed. Credit*

*Union*, 2019 WL 2269958, at *15 (S.D. Cal. May 28, 2019)).[3] And Plaintiff's counsel will request fees in the amount of their lodestar as of the filing of this motion, which is approximately $530,000, based on over 760 hours expended on the case. *See* Fitzgerald Decl. ¶¶ 32-33. Plaintiff will also seek reimbursement of $36,684 in costs. *See id.* ¶ 33.[4]

While Plaintiff's fee motion will argue these amounts are reasonable, the Settlement "is not dependent or conditioned upon the Court's approving Class Counsel's and Class Representatives' requests . . . or awarding the particular amounts sought," and if the "Court declines Class Counsel's or Class Representatives' requests or awards less than the amounts sought, this Settlement will continue to be effective and enforceable," SA ¶ 3.4.

## VIII. Timeline

Assuming the Court grants preliminary approval, the schedule proposed below gives Class Members sufficient time to receive Notice, and to make a claim, opt out, or object after reviewing Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

---

[3] Although she was the named plaintiff in a related action filed in New York, the Court may award Ms. Gates a service award given her involvement in the litigation and inclusion in the Settlement Agreement. *See, e.g., In re Netflix Privacy Litig.*, 2013 WL 1120801, at *2, *11 (N.D. Cal. Mar. 18, 2013).

[4] The Settlement Agreement includes a "quick pay" provision for attorneys' fees and costs. SA ¶ 3.2. These help deter meritless objections and are routinely approved in the Ninth and other Circuits. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) (collecting cases); *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) ("we observe that quick-pay provisions have generally been approved by other federal courts." (citations omitted)); *Pelzer v. Vassalle*, 655 Fed. App'x 352, 365 (6th Cir. 2016) ("over one-third of federal class action settlement agreements in 2006 included quick-pay provisions" (citation omitted) and they do "not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid").

| Event | Day | Weeks After Preliminary Approval | Example Assuming PA Granted Oct. 27, 2023 |
|---|---|---|---|
| Date Court grants preliminary approval | 0 | - | October 27, 2023 |
| Deadline to commence 63-day notice period | 21 | 3 weeks | November 17, 2023 |
| Deadline to file Motion for Attorneys' Fees, Costs, and Service Awards | 49 | 7 weeks | December 15, 2023 |
| Notice completion date, and deadline to make a claim, opt out, and object | 63 | 9 weeks | December 29, 2023 |
| Deadline to file Motion for Final Approval | 77 | 11 weeks | January 12, 2023 |
| Final Approval Hearing | 105 | 15 weeks | February 9, 2023 |

## **ARGUMENT**

"The claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "A court may approve a class action settlement of a class only 'after a hearing and on finding that it is fair, reasonable, and adequate,' and that it meets the requirements for class certification." *Regulus*, 2020 WL 6381898, at *2 (quoting Fed. R. Civ. P. 23(e)(2)). Where a complaint is brought on behalf of one or more state classes, if the Rule 23 requirements are satisfied, "[e]xpansion of the class to include all purchasers nationwide . . . does not change the class certification analysis." *McMorrow v. Mondelez Int'l, Inc.*, 2022 WL 1056098, at *3 (S.D. Cal. Apr. 8, 2022) ["*McMorrow II*"] (citing *Allen v. Similasan Corp.*, 2017 WL 1346404, at *3 (S.D. Cal. Apr. 12, 2017)); *see also In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2009) (en banc) ["*Hyundai*"].

## I.    The Court Should Certify the Settlement Class

"The party seeking class certification bears the burden of satisfying each of the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequate representation—and at least one requirement of Rule 23(b)." *Moriarty v. Am. Gen. Life Ins. Co.*, 2022 WL 6584150, at *2 (S.D. Cal. Sept. 27, 2022) (Moskowitz, J.) (citing *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019)). Those requirements are met here.

### A.    The Requirements of Rule 23(a) are Satisfied

#### 1.    Numerosity

A class action satisfies the numerosity requirement if "the class is so large that joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quotation omitted). This is typically true "when class size exceeds 40 members," *Mandalevy v. Bofi Holding Inc.*, 2022 WL 4474263, at *4 (S.D. Cal. Sept. 26, 2022) (citation omitted). Here, the Class is estimated at 1.4 million, Schwartz Decl. ¶ 7, easily satisfying the requirement.

#### 2.    Commonality

"Rule 23(a)(2) commonality requires 'questions of fact or law common to the class,' though all questions of fact and law need not be in common." *Regulus*, 2020 WL 6381898, at *3 (quoting *Hanlon*, 150 F.3d at 1026). The "burden for showing commonality is 'minimal,'" *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *3 (S.D. Cal. May 12, 2016) (quoting *Hanlon*, 150 F.3d at 1020). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement," *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted), which exists "where a defendant has engaged in standardized conduct toward members of the class." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4992504, at *6 (S.D. Ill. Sept. 16, 2016) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (listing cases)). To satisfy Rule 23(a)(2), "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (alterations and quotation omitted).

Here, whether NextFoods' health and wellness labeling for the Class Products was misleading, and whether purchasers paid more as a result, are issues common to the putative

9

class. *See Regulus*, 2020 WL 6381898, at *3 ("The focus of this action is common to all class members, namely whether Defendants misrepresented material facts or omitted material facts . . . and whether these alleged actions artificially inflated . . . [the] price.").

### 3.    Typicality

"Rule 23(a)(3) requires that the plaintiff show that 'the claims of the representative parties are typical of the claims or defenses of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(3)). "This requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1118 (N.D. Cal. 2018) (quotation marks and quotation omitted).

Here, the Class Representatives' claims are typical of Settlement Class Members' claims because each purchased Class Products and were exposed to challenged labeling claims and omissions, allegedly losing money as a result. The injuries they claim are "the same injuries each [Settlement] Class Member alleges based on the same [NextFoods] conduct," *see id.* at 1118 (quotation omitted); *see also Regulus*, 2020 WL 6381898, at *3 ("Lead Plaintiff's claims are typical of those of the class, as they advance the same claims, share identical legal theories, and allegedly experience the same losses from [Defendant's] alleged misrepresentations.").

### 4.    Adequacy

"Under Rule 23(a)(4), representative parties must be able to 'fairly and adequately protect the interest of the class.'" *Mandalevy*, 2022 WL 4474263, at *5 (quoting Fed. R. Civ. P. 23(a)(4)). In analyzing this requirement, "the Court must ask two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Id.* (quoting *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012)).

Here, Ms. Andrade-Heymsfield and Ms. Gates are adequate Class Representatives because each is a *bona fide* purchaser with standing, has no conflicts, and has been aware of

10

and carried out their obligations on behalf of the Class. *See* Andrade-Heymsfield Decl. ¶¶ 2-8; Gates Decl. ¶¶ 4-10; *cf. Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). And—as several California district courts have recently found—Plaintiff's counsel is adequate Class Counsel, experienced in prosecuting similar actions. *See Testone v. Barlean's Organic Oils, LLC*, 2023 WL 2375246, at *9 (S.D. Cal. Mar. 6, 2023); *Hanson v. Welch Foods Inc.*, 2022 WL 1133028, at *1 (N.D. Cal. Apr. 15, 2022); *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 597 (N.D. Cal. 2021); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 (N.D. Cal. 2020); *Hadley*, 324 F. Supp. 3d at 1119-21; *cf. McMorrow II*, 2022 WL 1056098, at *7 ("Plaintiffs argue that 'great skill was required by Class Counsel here . . . .' This Court tends to agree." (record citation omitted)); *see also* Fitzgerald Decl. ¶ 31, Ex. 4 (firm resume).

## B. The Requirements of Rule 23(b)(3) are Satisfied

### 1. Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "[E]ven if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Hyundai*, 926 F.3d at 557 (quoting *Tyson Foods*, 136 S. Ct. at 1045). Moreover, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *Id.* at 558; *see also Jabbari v. Farmer*, 965 F.3d 1001, 1005-1006 (9th Cir. 2020). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

"In evaluating predominance, courts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 406768, at *7 (E.D. Cal. Jan. 24, 2020) (citation omitted). "Class actions in which a defendant's uniform

11

policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." *Castro v. Paragon Indus., Inc.*, 2020 WL 1984240, at *10 (E.D. Cal. Apr. 27, 2020) (citations omitted); *accord Moreno v. Beacon Roofing Supply, Inc.*, 2020 WL 1139672, at *3 (S.D. Cal. Mar. 9, 2020) (predominance satisfied where "liability would be determined by looking at [defendant]'s uniform policies and practices"). This "is a test readily met in certain cases alleging consumer . . . fraud," *Amchem*, 521 U.S. at 625 (citations omitted), because "the crux of each consumer's claim is that a company's mass marketing efforts, common to all consumers, misrepresented the company's product," so that a "cohesive group of individuals suffered the same harm in the same way because of the [defendant's] alleged conduct," *see Hyundai*, 926 F.3d at 559 (predominance present where "class members were exposed to uniform fuel-economy misrepresentations and suffered identical injuries within only a small range of damages"). Thus, courts regularly find predominance in settlements of consumer fraud class actions. *See*, *e.g.*, *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *2 (S.D. Cal. Jan. 31, 2020) ("common questions of law and fact" that "predominate over individual questions" included, *inter alia*, "whether Ocean Spray's representations . . . were false and misleading or reasonably likely to deceive consumers"); *cf. Regulus*, 2020 WL 6381898, at *3 ("The common questions in this case which would be subject to common proof include whether Defendants misrepresented material facts or omitted material facts . . . whether Defendants had a duty to disclose alleged material omissions . . . and whether the market price . . . was artificially inflated due to the alleged material omissions and/or misrepresentations. These questions predominate.").

Here, the First Amended Complaint alleges that "NextFoods markets the JuiceDrinks as promoting digestive health, as well as 'overall' health and wellness, by placing on the JuiceDrinks' labels, statements that expressly or implicitly convey the message that the JuiceDrinks are healthy." FAC ¶ 14; *see also id.* ¶ 15 (setting forth challenged health and wellness claims). It alleges those claims are "false and misleading for several reasons," *id.* ¶ 2, including that "the sugar contained in the JuiceDrinks directly harms digestive health and those harmful effects to the digestive system increase inflammation which [ ] thereby

12

increase[s] risk of metabolic syndrome, obesity, and type 2 diabetes," *id.* ¶ 4; *see also id.* ¶¶ 98, 100 (scientific evidence of digestive and general health harms from sugar consumption renders NextFoods' claims misleading). Predominance is satisfied by these allegations.

Moreover, while all Class Products included in the Settlement bore challenged health and wellness claims, Fitzgerald Decl. ¶ 8, Plaintiff also asserted an omissions theory that applies to all Class Products, *see* FAC ¶ 101, and this separately presents predominating common questions. *See Butler v. Porsche Cars N. Am., Inc.*, 2017 WL 1398316, at *10 (N.D. Cal. Apr. 19, 2017) ("exposure and reliance suitable for class-wide resolution . . . where the class was defined as all purchasers" and plaintiff's "claims were based on information omitted from the product's packaging"). "In these cases, all class members were 'necessarily exposed' to the defendant's omissions on the package prior to purchase," *Id.* (quoting *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1105 (C.D. Cal. 2015)).

## 2. Superiority

"The superiority inquiry 'requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case.'" *Scheuneman v. Arena Pharms., Inc.*, 2020 WL 3129566, at *3 (S.D. Cal. June 12, 2020) (quoting *Hanlon*, 150 F.3d at 1023). A "relatively limited potential recovery for the class members as compared with the costs [of] litigating the claims . . . support[s] the conclusion that a class action is superior to other methods . . . ." *See id.*; *accord Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012) (The "superiority requirement is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" (quotation omitted)); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

The Class Products cost $3.36 each, and damages are likely to be about 4% of the price, or 13 cents per unit. *See* Fitzgerald Decl. ¶¶ 5, 15. Thus, "[t]here can be no doubt . . . that a class is the superior method of handling these consumer claims." *Milan*, 340 F.R.D. at 602 (Noting that the "bars at issue here cost no more than a few dollars per bar . . . and it is not likely for class members to recover large amounts individually if they prevailed." (record citation omitted)).

13

## II.    The Court Should Approve the Proposed Settlement

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Watkins v. Hireright, Inc.*, 2016 WL 1732652, at *3 (S.D. Cal. May 2, 2016) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). At this first step, the Court must make "a preliminary determination of whether the class-action settlement is 'fair, reasonable, and adequate' pursuant to Rule 23(e)(2)." *Id*., at *6. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citation omitted). Factors relevant to this determination include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).

"Preliminary approval of a settlement and notice to the proposed class is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Manner v. Gucci Am., Inc.*, 2016 WL 1045961, at *6 (S.D. Cal. Mar. 16, 2016) ["*Gucci*"] (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). "In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class." *Regulus*, 2020 WL 6381898, at *2 (citing *Hanlon*, 150 F.3d at 1027).

A.      **The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations**

That the Settlement was reached only after significant discovery and litigation shows that it resulted from arm's-length negotiations. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1122, 1127 (9th Cir. 2020) (case being "nearly [at] the close of discovery" indicated "the settlement's substantive fairness"); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 486 (E.D. La. 2020) (

> Counsel on both sides have zealously advocated for their clients. . . as evidenced by the extensive discovery, motions practice, and significant resources expended in this case. The parties entered the negotiation with the experience and institutional knowledge necessary to successfully negotiate on behalf of their clients, and the settlement was accordingly achieved as a result of the adversarial process.).

In addition, the Settlement was negotiated during a Settlement Conference with Judge Berg. *See* Dkt. No. 51; *cf. Gucci*, 2016 WL 1045961, at *7 (finding a "proposed Settlement was the result of 'serious, informed, and non-collusive arm's-length negotiations'" where the parties engaged in "mediation efforts overseen by retired United States Magistrate Judge Edward Infante, who conducted a full-day mediation session" (citations omitted)); *Hale v. Manna Pro Prod., LLC*, 2020 WL 3642490, at *11 (E.D. Cal. July 6, 2020) ("extensive discovery and arm[']s-length, mediator-guided negotiations all suggest the settlement agreement is not the product of collusion"); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (The "use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" (citation omitted)).

Also, none of the "subtle signs" of collusion that the Ninth Circuit identified in *Bluetooth* are present here. *See* 654 F.3d at 947. Nothing in the Agreement purports to entitle counsel to "a disproportionate distribution of the settlement" (and Class Members *are* to "receive[] [a] monetary distribution"); nothing returns unawarded fees to NextFoods; and the

15

Settlement Agreement includes no "clear sailing" agreement, instead providing only that counsel will apply to the Court for fees, imposing no conditions on NextFoods' response, and making the fee determination independent of the Settlement's other provisions, *compare* SA ¶ 3.4, *with Bluetooth*, 654 F.3d at 947 (quotations omitted).

"[T]he prospect of fraud or collusion is substantially lessened where, as here, the settlement agreement leaves the determination and allocation of attorney fees to the sole discretion of the trial court," *Chinese Drywall*, 424 F. Supp. 3d at 486. Here, "[b]ecause the parties have not agreed to an amount of attorney fees and instead [will] merely petition[] the Court for an award they believe is appropriate, there is no threat of the issue tainting the fairness of the settlement negotiations." *See id.* Similarly, no other agreements have been made in connection with the settlement, Fitzgerald Decl. ¶ 2, so there is no possibility such an agreement "may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others," Fed. R. Civ. P. 23(e), advisory committee note (2003 amendment).

Finally, the excellent nature of the Settlement, especially in the face of significant risks the Class faced, *see* Fitzgerald Decl. ¶¶ 14-21, demonstrates it was achieved through vigorous litigation, rather than collusion, since "cash . . . is a good indicator of a beneficial settlement," *Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ["*W. Pub'g*"], and a sign that Class Counsel did not subvert the Class's interests to NextFoods' interests "in exchange for red-carpet treatment on fees," *see Bluetooth*, 654 F.3d at 947 (quotation omitted).

**B.    The Settlement Does Not Grant Preferential Treatment**

The Settlement does not treat the Class Representatives or any Class Members preferentially, since every Class Member who makes a claim, including the Class Representatives, will be subject to the same claims process that provides the same remedy based on the Claimant's purchase history. That the Class Representatives will move for service awards does not change this analysis. *See Regulus*, 2020 WL 6381898, at *5 ("[T]he service award Lead Plaintiff seeks is reasonable and does not constitute inequitable treatment of class members" where "[u]nder the Settlement Agreement, class members who have

16

submitted timely claims will receive payments on a *pro rata* basis . . . ." (citation omitted));
*see also Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011)
(no preferential treatment where settlement "provides equal relief to all class members" and
"distributions to each class member—including Plaintiff—are calculated in the same way").

### C.    The Settlement Falls within the Range of Possible Approval

"'The relief the settlement is expected to provide to class members is a central
concern,' though it is not enumerated among the factors of Rule 23(e)," *Regulus*, 2020 WL
6381898, at *5 (quoting Fed. R. Civ. P. 23, advisory committee's note (2018 amendment)).
"To evaluate the range of possible approval criterion, which focuses on substantive fairness
and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the
value of the settlement offer." *Harris*, 2011 WL 1627973, at *9 (quoting *Vasquez v. Coast
Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009)).

> Additionally, to determine whether a settlement is fundamentally fair, adequate,
> and reasonable, the Court may preview the factors that ultimately inform final
> approval: (1) the strength of the plaintiffs' case; (2) the risk, expense,
> complexity, and likely duration of further litigation; (3) the risk of maintaining
> class action status throughout the trial; (4) the amount offered in settlement; (5)
> the extent of discovery completed and the stage of the proceedings; (6) the
> experience and views of counsel; (7) the presence of a governmental participant;
> and (8) the reaction of class members to the proposed settlement.

*Id.* (citing *Churchill Vill.*, 361 F.3d at 575); *accord Winters*, 2020 WL 5642754, at *3 (citing
*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)).

### 1.    The *Churchill Village* Factors Favor Preliminary Approval

An initial analysis of the *Churchill Village* factors favors preliminary approval.

***The Strength of Plaintiff's Case*** and ***the Risk, Expense, Complexity, and Duration
of Further Litigation.*** Plaintiff and her counsel believe the theory underlying this case was
and is strong on the merits, but despite that, this particular case faced significant challenges
to Plaintiff establishing liability and obtaining damages. *See generally* Fitzgerald Decl. ¶¶ 14,

17

16, 18, 20. Particularly given the scientific evidence that there are some health benefits to the probiotics in the Class Products, there was a risk the Class could lose at trial and recover nothing—as has happened in several seemingly meritorious consumer fraud class actions that have recently gone to trial in California with judgments returned for defendants. *See Farar v. Bayer AG*, No. 14-cv-4601 (N.D. Cal.); *Allen v. Hyland's, Inc.*, No. 12-cv-1150 DMG (MANx) (C.D. Cal.); *cf. Racies v. Quincy Bioscience, LLC*, No. 15-cv-292 (N.D. Cal.) (declaring mistrial and decertifying class).

Moreover, because of the need for expert scientific testimony from both sides, trial would have been complex and expensive. "[C]ontinued litigation of this matter would include motions for summary judgment, trial and appeal" and "further litigation would have significantly delayed any relief to Class Members," *Watkins*, 2016 WL 1732652, at *7 (record citations and quotation marks omitted); *see also Regulus*, 2020 WL 6381898, at *5 ("Proceeding with this case presents very real risks regarding additional pleading challenges, class certification, summary judgment, *Daubert* and *in limine* motions, proving the necessary falsity . . . and damages if the case proceeded to trial, and a possible unfavorable decision on the merits," and "these risks weigh in favor of settlement." (citation omitted)).

In sum, "'these types of food labeling claims are difficult to maintain,' and success at trial was far from certain," *Testone*, 2023 WL 2375246, at *6 (quoting *Guttmann v. Ole Mexican Foods, Inc.*, 2016 WL 9107426, at *3 (N.D. Cal. Aug. 1, 2016)).

Further, even complete success at trial would leave Class Members outside California and New York uncompensated. For even the possibility of obtaining the nationwide relief conferred by the Settlement, Class Counsel or other attorneys would have to file and prosecute actions in all other states since—given existing precedent—it is virtually impossible that the claims of the nationwide Settlement Class could ever be adjudicated in a single forum and trial. *See, e.g., Warner v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 8578913, at *12 (C.D. Cal. Dec. 2, 2016) ("Nationwide class certification under the laws of multiple states can be very difficult for plaintiffs' counsel." (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590-94 (9th Cir. 2012); *In re Pharm. Indus. Average*

18

*Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) ("While numerous courts have talked-the-talk that grouping of multiple state laws is lawful and possible, very few courts have walked the grouping walk."))); *Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *3 (S.D. Cal. Apr. 24, 2018) (That "[t]he parties acknowledge[d] that obtaining a nationwide class may be difficult in light of recent case law . . . . weigh[ed] in favor of settlement."). Such litigation would cost the respective state classes millions of dollars to prosecute, be inherently risky, and continue for years, not including any appeals. *See* Fitzgerald Decl. ¶ 16.

Finally, even if successful at trial, Plaintiff faced risk on appeal, especially given the unfavorable outcomes of two similar cases that were dismissed on the pleadings and had unsuccessful appeals. *See* Fitzgerald Decl. ¶ 20. These factors thus weigh in favor of preliminary approval. *See Watkins*, 2016 WL 1732652, at *7 ("The Court agrees with the parties that the proposed Settlement eliminates the litigation risks and ensures that the Class Members receive some compensation for their claims. Therefore, on balance, the strength of Plaintiff's case and risk of further litigation favor approving the proposed Settlement."); *Allen*, 2017 WL 1346404, at *4 (holding the same where, like here, "the litigation involves complex issues requiring extensive resources, expert testimony and a likely appeal, if the case goes to trial"); *Winters*, 2020 WL 5642754, at *3.

**The Risk of Maintaining Class Action Status Through Trial.** A "district court may decertify a class at any time." *W. Pub'g*, 563 F.3d at 966 (citation omitted). Decertification happens with some regularity, including by courts in this district. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*, 2016 WL 2610107, at *5-8 (S.D. Cal. May 6, 2016), *aff'd*, 926 F.3d 528 (9th Cir. 2019); *Yeoman v. Ikea U.S.A. W., Inc.*, 2014 WL 7176401, at *7 (S.D. Cal. Dec. 4, 2014), *vacated and remanded sub nom.* on other grounds in *Medellin v. Ikea U.S.A. W., Inc.*, 672 Fed. App'x 782 (9th Cir. 2017); *see also Tschudy v. J.C. Penney Corp., Inc.*, 2015 WL 8484530, at *6 (S.D. Cal. Dec. 9, 2015); *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 643 (S.D. Cal. 2015) (partially granting "motion to decertify the subclasses on the issue of damages").

***The Settlement Amount.*** The settlement amount here is favorable in comparison to other recent settlements of similar cases. For example, out of six settlements of similar sugar cases, the amount here is 2.24 times larger than the next-largest as a proportion of nationwide damages, and the largest as a proportion of nationwide sales—by more than double the next-largest. *See* Fitzgerald Decl. ¶ 17. Given the challenges Plaintiff faced, this is a very reasonable, if not excellent result. *See id.* ¶ 21. As discussed below, the amount is also reasonable in relation to the Settlement Class's potential recovery. *See infra* Point II(C)(2).

***The Extent of Discovery Completed and Procedural Posture.*** Because fact discovery was substantially complete and Plaintiff's expert analysis was underway, "the parties ha[d] sufficient information to make an informed decision about settlement." *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (citation omitted). This factor thus favors preliminary approval. *See Allen*, 2017 WL 1346404, at *4 (factor favored approval where "Plaintiffs engaged in substantial discovery and negotiations" and parties "briefed, and the Court has ruled on, [] motions to dismiss . . . [and] a motion for class certification").

***The Experience and Views of Counsel.*** The Ninth Circuit has "held that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *W. Pub'g*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995)). "Generally, '[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Allen*, 2017 WL 1346404, at *5 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Here, Class Counsel has considerable experience in consumer class actions, and particularly those involving the false advertising of foods, especially foods with high sugar content touted as healthy. Fitzgerald Decl. ¶ 21. Moreover, given counsel's experience litigating several similar cases during the pendency of this action, counsel has been exposed to a wide variety of information about the claims and defenses, and ultimately the potential upside and risks attendant to this case, and endorse the Settlement. *Id.* Accordingly, this factor favors preliminary approval. *See Gucci*, 2016 WL 1045961, at *7 ("[G]iving the appropriate weight to class counsel's recommendation, the Court concludes that this factor also weighs

20

in favor of approval." (citation omitted)); *cf. Testone*, 2023 WL 2375246, at *4 ("Here, given [Fitzgerald Joseph LLP's] experience in prosecuting class actions, including cases involving the false advertising of foods (like coconut oil), Class Counsel's recommendations are presumed to be reasonable, and this factor accordingly favors [final] approval."); *McMorrow II*, 2022 WL 1056098, at *4 ("Here, due especially to the experience and knowledge of [Fitzgerald Joseph LLP as] Class Counsel, their recommendations are presumed to be reasonable, and this factor accordingly favors [final] approval.").

*Governmental Participation.* "There is no governmental participant in this case, so this factor is neutral." *Allen*, 2017 WL 1346404, at *5.

*Class Member Reaction.* Because "Class Members will have an opportunity to object or opt out of the Settlement [,] at this time, this factor weighs in favor of approving the Settlement," *Gucci*, 2016 WL 1045961, at *7.

### 2.    The Monetary Relief is Fair in Relation to Potential Damages

Here, Plaintiff and Class Counsel secured for the Settlement Class direct monetary benefits of $1.25 million, which is reasonable in relation to the Settlement Class's potential damages. *See* Fitzgerald Decl. ¶¶ 15-16 (estimating damages for California, New York, and nationwide classes to be $453,000, $33,000, and $2.98 million respectively, representing a recovery of 276% of the California class's damages; 257% of the damages of a combined California and New York class; and 42% of the nationwide Settlement Class's damages); *cf. Regulus*, 2020 WL 6381898, at *6 (finding settlement fund "represents a respectable recovery for the class" where it represented "1.99% of total estimated damages").

Moreover, if the Court awards the full amount of attorneys' fees, costs, and service awards Class Representatives may request, given the estimated class size and claims rate, the average cash refund for Class Member Claimants is estimated to be $7.48. *See* Fitzgerald Decl. ¶¶ 26-27. Based on an estimated price premium of 3.97% due to the challenged claims, which is reasonably grounded in consumer surveys performed on similar claims in similar cases, *see id.* ¶ 15, actual damages would be 13¢ per container given the Class Products' average unit price of $3.36. *See id.* ¶ 5. Thus, the amount Claimants are estimated to receive

21

represents a recovery of full damages for approximately 57 units, or about 10 units per year over the 6-year Class Period. This likely exceeds most Class Members' actual damages, since most will not have purchased with that frequency for that duration. *Id.* ¶ 27.

Moreover, at $3.36 per unit, the $7.48 average recovery anticipated represents a full refund for more than 2 units per Claimant. Thus, the monetary relief is fair in relation to potential damages. *See Winters*, 2020 WL 5642754, at *4 (Where "Class Members who file for monetary relief are likely on average to receive approximately $17.70, which represents a 31% refund on the purchase price of the product," the "monetary compensation and the stipulated injunctive relief offered in the Settlement Agreement is sufficient for approval." (record citation omitted)); *Hilsley*, 2020 WL 520616, at *6 ($1.00 recovery per purchase "is an excellent result" considering the fraction of purchase price recoverable at trial and in light of expert opinion that price premium was 19% (record citation omitted)); *cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (quotation and quotation marks omitted)).

### 3.    The Injunctive Relief is Appropriate and Meaningful

"[T]here is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes. *See Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013). It benefits not just Class Members, but also "the marketplace, and competitors who do not mislabel their products." *Id.*; *accord McMorrow II*, 2022 WL 1056098, at *6 (

> An injunction precluding Defendant from using the term "nutritious" and other synonyms on Class Products' labels for three years following final approval is undoubtedly beneficial to class consumers, the marketplace, and even to competitors who do not mislabel their products. It is a mark of success that the class was able to secure the type of injunctive relief sought in its Complaint, and

. . . it supports the Court's conclusion that the settlement is an exceptional result for the class. (internal citations omitted)).

The injunctive relief obtained here is especially noteworthy because the Court dismissed Plaintiff's claims for injunctive relief, limiting her leverage to obtain it. *See Andrade-Heymsfield I*, 2022 WL 1772262, at *7. Despite this, the labeling change effectively espouses a large portion of Plaintiff's case theory, prohibiting NextFoods from advertising the JuiceDrinks as promoting "GoodHealth," narrowing the ways in which it can mention "overall health" or "overall wellness," and requiring it to include explanatory language about sugar content.

## III.    The Court Should Approve the Class Notice and Notice Plan

"Under Rule 23(c)(2)(B), 'the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Allen*, 2017 WL 1346404, at *5. "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Id.* (quotation and citation omitted).

P&N's proposed Notice Plan is reasonable under the circumstances. It includes targeted print and online ads and will reach an estimated minimum 70% of Class Members, and more than twice each. *See* Schwartz Decl. ¶¶ 11-12; *see also Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 Fed. App'x 538 (9th Cir. 2021) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23." (footnote omitted)).

The proposed Notice itself is also appropriate, since it contains "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). The Notice sufficiently informs Class Members of (1) the nature of the litigation, the Settlement Class, and the identity of Class Counsel, (2) the essential terms of the Settlement, including the gross settlement award and net settlement payments class members can expect to receive,

23

(3) how notice and administration costs, court-approved attorneys' fees, costs, and service awards will be paid from the Settlement Fund, (4) how to make a claim, opt out, or object to the Settlement, (5) procedures and schedules relating to final approval, and (6) how to obtain further information. *See* SA Ex. 1, Long Form Notice.

## **CONCLUSION**

The Court should, respectfully, grant preliminary approval to the Settlement, authorize Class Notice, appoint Ms. Andrade-Heymsfield and Ms. Gates as Class Representatives and their counsel as Class Counsel, set deadlines for making claims, opting out, and objecting, and schedule a Final Approval Hearing and related deadlines.

Dated: September 22, 2023          Respectfully Submitted,

/s/ Jack Fitzgerald

**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***